[Nos. A116277, A117751. First Dist., Div. One. Aug. 11, 2008.]

VENTAS FINANCE I, LLC, Plaintiff and Respondent, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, Randall P. Borcherding, Jeffrey Rich and Marguerite C. Stricklin, Deputy Attorneys General, for Defendant and Appellant.

Silverstein & Pomerantz, Amy L. Silverstein and Edwin P. Antolin for Plaintiff and Respondent.

**OPINION**

**STEIN, J.**—California's Franchise Tax Board (FTB) appeals from a judgment ordering a refund to Ventas Finance I (Ventas), a limited liability company (LLC), of $29,540, the entire amount it paid pursuant to former[1] Revenue and Taxation Code[2] section 17942 for the years 2001, 2002, and 2003, and a postjudgment order awarding attorney fees to Ventas in the amount of $215,016 pursuant to Code of Civil Procedure section 1021.5.

The trial court ordered the refund based upon its conclusion that, as applied to Ventas, the levy imposed by former section 17942 violated the commerce clause of the United States Constitution (U.S. Const., art. I, § 8, cl. 3)

---

[1] We refer to the version of Revenue and Taxation Code section 17942 at issue in this appeal as former section 17942, because in 2007, after the judgment was entered, and after the court entered a postjudgment order awarding attorney fees, the Legislature amended Revenue and Taxation Code section 17942. (Stats. 2007, ch. 381, § 2; see, *post*, at pp. 1216–1217.)

[2] All subsequent statutory references are to the Revenue and Taxation Code unless otherwise indicated.

(Commerce Clause) because the levy was based upon total income without apportionment to income attributable to, or derived from, California sources. Although at least some of Ventas's income did derive from California sources, the court ordered FTB to refund the entire amount.

In its postjudgment order awarding attorney fees, the court rejected FTB's contention that section 19717 is the exclusive means of obtaining fees in a tax refund suit. It further ruled that Ventas was the successful party within the meaning of Code of Civil Procedure section 1021.5, and that Ventas met the remaining criteria for an award of fees. In calculating the amount of reasonable fees, the court applied a 1.5 multiplier to a lodestar figure of $143,343.75.

██ We shall uphold the trial court's determination that former section 17942, as applied to Ventas, violates the Commerce Clause because it is not fairly apportioned, and that the court properly denied FTB's request that it judicially reform former section 17942 by rewriting it to include an apportionment mechanism. We shall also conclude, however, that neither federal due process nor any principle of California law requires FTB to refund the entire amount Ventas paid. The refund should be limited to the amount Ventas paid for the years in issue that exceeds the amount it would have been assessed, without violating the Commerce Clause, using a method of fair apportionment.[3] We therefore shall reverse the judgment in part, and remand with directions to redetermine the amount of the refund. In all other respects, we shall affirm the judgment.

██ We shall also hold that section 19717 is not the exclusive means of obtaining attorney fees in a tax refund suit, and that fees may be awarded pursuant to Code of Civil Procedure section 1021.5, if the criteria specified therein are otherwise established. In light of the partial reversal of the underlying judgment, however, we cannot say with certainty that the court would exercise its discretion in the same manner. We therefore shall also reverse the postjudgment order awarding attorney fees, and remand with directions that the court may redetermine eligibility and the amount of reasonable fees in light of our partial reversal of the judgment.

---

[3] In light of this disposition we shall not reach the question whether the newly enacted section 19394, which specifies a method for calculating the amount of refunds in the event that former section 17942 is finally adjudged to violate the Commerce Clause, may be applied to this case or whether any principle of due process would preclude its retroactive application.

We deferred ruling on FTB's request that we take judicial notice of a September 2007 legislative committee analysis and reanalysis of Assembly Bill No. 198 (2007–2008 Reg. Sess.), which added section 19394, and Ventas's request that we judicially notice the complete bill history. We do not reach any of the issues relating to the application of section 19394 and therefore deny these requests for judicial notice.

## FACTS[4]

### 1. *The Suit for Refund.*

Ventas was formed in 2001 as a limited liability company under the laws of the State of Delaware. It is wholly owned by Ventas, Inc., a Delaware real estate investment trust, and was formed to obtain financing secured by certain skilled nursing facilities to which Ventas held title. From 2001 to 2003, Ventas owned 39 to 40 facilities, three of which were located in California. Ventas had no other property, employees, or representatives working on its behalf in California.

On November 19, 2001, Ventas registered as a foreign LLC with the California Secretary of State, and remained registered through 2003. In 2001, 2002, and 2003 Ventas paid the $800 minimum tax imposed under section 17941. It also paid the following amounts imposed under former section 17942 based upon its "total income from all sources reportable to this state for the taxable year" (former § 17942, subd. (a)): 2001—$6,000; 2002—$11,790; 2003—$11,790. In accordance with FTB's interpretation of former section 17942, Ventas reported its total income from all geographic sources to calculate the amount owed without apportionment to California sources. It was stipulated that if the apportionment methodology California uses for corporations (see § 25128 et seq.) were applied, Ventas's California apportionment percentage would have been only 8.06 percent, 8.34 percent and 6.94 percent, respectively, for these years.

On January 4, 2005, Ventas filed a timely claim for refund on the ground that former section 17942 contained no method for apportioning the levy to the proportionate amount of income earned, or attributable to economic activity, in California and therefore violates the Commerce Clause and the due process clause of the United States Constitution. On February 24, 2005, and again on March 1, 2005, FTB informed Ventas that it had denied the refund claim. Although Ventas did not file an appeal to the State Board of Equalization, it did exhaust its administrative remedies for the purpose of filing a suit for refund, and timely filed its complaint seeking a refund.

After a trial based upon stipulated facts, the court held that former section 17942 is a tax and, as applied to Ventas, violates the Commerce Clause and due process, because it is based upon all income unapportioned to activities

---

[4] This statement of facts is based primarily upon a "Joint Stipulation of Facts" and "Joint Stipulation Regarding Documents."

within California. The court refused FTB's request to reform former section 17942 to add an apportionment mechanism because the legislative history showed that the Legislature had considered and rejected including an apportionment mechanism, and neither the statute nor the legislative history contained any indication of the type of apportionment mechanism the Legislature would have enacted. The court ordered that Ventas was entitled to a refund of the entire amount it paid pursuant to former section 17942, plus interest and costs for the years in issue. FTB filed a timely notice of appeal from the judgment.

## 2. *The Motion for Attorney Fees.*

Ventas thereafter filed a motion seeking attorney fees pursuant to Code of Civil Procedure sections 1021.5 and 1032, subdivision (b). The case was accepted on a contingency fee basis. Based upon standard billing rates, the attorney fees actually incurred through November 2006 would have totaled $143,343.75. Ventas sought $30 million in fees.

This request for a substantial upward adjustment of the lodestar figure was largely predicated upon the theory that this case was the second of two filed by the same attorneys for different plaintiffs that, if upheld, would entitle tens of thousands of LLC's registered in California to obtain refunds estimated to total as much at $1.4 billion, and no less than $300 million.

In the first case, *Northwest Energetic Services, LLC v. Franchise Tax Bd.* (Super Ct. S.F. City and County, 2006, No. CGC-05-437721), the same attorneys who represented Ventas had already obtained a judgment ruling that former section 17942 was unconstitutional as applied, and an award of $3.5 million in attorney fees.[5] The plaintiff LLC in that case, however, did not earn any income that could be sourced to California, and there had been no dispute that it was entitled to a refund of all amounts it had paid. Ventas argued the instant litigation was necessary to address FTB's position that only those LLC's that had no income attributable to California sources were entitled to a full refund. In all other cases, FTB maintained that the appropriate remedy was to refund the difference between the amount the LLC paid and the amount it would have paid if former section 17942 included a fair apportionment mechanism. Ventas reasoned that this litigation conclusively resolved issues left unresolved after the *Northwest* trial by establishing

---

[5] FTB appealed that judgment and attorney fee order, and on January 21, 2008, Division Five of this court filed its opinion in the consolidated appeals *Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841 [71 Cal.Rptr.3d 642], review denied June 11, 2008 (*Northwest*).

that former section 17942 could not be judicially reformed, and that any LLC that paid the levy is entitled to a full refund.

FTB, on the other hand, estimated the amount of potential refunds as a result of the *Northwest* trial and this case was closer to $215 million. FTB based its much smaller estimate on its determination that approximately 93 percent of LLC's earned all of their income from California sources. It reasoned that, as applied to these LLC's, former section 17942 would not violate the Commerce Clause. FTB argued that the decision following the *Northwest* trial and in this case therefore only applied to 7 percent of registered LLC's that had no income from California sources, or, like Ventas, had income from both inside and outside California. These two categories of LLC's together paid 21.5 percent of the levy paid annually under former section 17942.

The court found both estimates to be somewhat speculative, but concluded that the economic benefit secured by this case was "at least the $215 million" in refunds "due to California LLCs with activities within and without California." The court relied upon this estimate both as a factor in concluding that the litigation had produced considerable pecuniary benefits for a large class of persons, and as a factor in applying an upward adjustment to the lodestar figure, albeit a much more modest increase than Ventas had sought.[6]

In selecting a multiplier of 1.5, the court weighed the additional benefits conferred by the litigation, including "the preservation of valuable resources, both public and private, and particularly those of the judiciary, by obviating the need for duplicative litigation; and the vindication of important constitutional rights under the Commerce and Due Process Clauses of the United States Constitution, particularly the right to engage in interstate commerce without undue burdens." The court also considered the skill of Ventas's lead counsel, the fact that compensation was contingent and that no one else in the last 10 years had been prepared "to take on this litigation." Against these factors, the court weighed the fact that the work involved was not "wholly" novel because except for the issue of reformation and the related issue of the measure of the refund, this litigation was duplicative or "substantially similar" to the issues litigated in the *Northwest* trial.

---

[6] FTB does not dispute that Ventas demonstrated the cost of private enforcement exceeded the potential benefit to any individual LLC. Ventas submitted an expert declaration below explaining that one of the reasons former section 17942 had not been challenged was that the maximum refund for any LLC would be $11,790 per year, and that the cost of litigating the Commerce Cause issue would far exceed that amount.

The court applied the multiplier of 1.5 to the lodestar figure of $143,343.75, to award fees in the amount of $215,016.

### 3. *Postjudgment[7] Legislation.*

On October 10, 2007, the Governor signed into law Assembly Bill No. 198 (2007–2008 Reg. Sess.), amending former section 17942 for taxable years beginning on and after January 1, 2007, and adding section 19394 (Stats. 2007, ch. 381, § 3). The amendment changed the language of former section 17942, subdivision (a) from "total income from all sources reportable to this state" to "total income from all sources derived from or attributable to this state." It also added the following language: " 'total income from all sources derived from or attributable to this state' shall be determined using the rules for assigning sales under Sections 25135 and 25136 and the regulations thereunder, as modified by regulations under Section 25137, other than those provisions that exclude receipts from the sales factor." (§ 17942, subd. (b)(1)(B).)

Assembly Bill No. 198 (2007–2008 Reg. Sess.) also added section 19394, which specifies that if the levy under former section 17942 is "finally adjudged" to be unconstitutional, the remedy shall be for the FTB to recompute it "only to the extent necessary to remedy the discrimination or unfair apportionment," and refund the difference.

Section 4 of Assembly Bill No. 198 (2007–2008 Reg. Sess.) further provides as follows:

"SEC. 4. (a) The Legislature is aware of pending litigation challenging the validity of the fee imposed pursuant to Section 17942 of the Revenue and Taxation Code.

"(b) The amendments made by Section 2 of this act to Section 17942 of the Revenue and Taxation Code, if enacted, shall apply to taxable years beginning on and after January 1, 2007.

"(c) Section 19394 of the Revenue and Taxation Code, as added by Section 3 of this act, shall apply to suits for refunds filed on or after the date of enactment of this act and suits for refunds filed before that date that are not final as of that date.

---

[7] The notice of entry of judgment in this case was filed on December 14, 2006, and FTB filed a timely notice of appeal on December 19, 2006. The notice of entry of the order awarding fees and costs was filed on May 1, 2007, and FTB filed a timely notice of appeal of this postjudgment order. Ventas filed a cross-appeal of the attorney fee order, but states in its brief that it has withdrawn the cross-appeal.

"(d) Refunds of fees payable as a result of the litigation described in subdivision (a) shall be limited to the amount by which the fee paid, and any interest assessed thereon, exceeds the amount that would have been assessed if the fee had been computed in accordance with subparagraph (B) of paragraph (1) of subdivision (b) of Section 17942 of the Revenue and Taxation Code, as added by the amendments to that section made by Section 2 of this act.

"(e) It is the intent of the Legislature that no inference be drawn in connection with the amendments made by this act to Section 17942 of the Revenue and Taxation Code for any taxable year beginning before January 1, 2007." (See § 19394.)

ANALYSIS

I.

## Constitutional Validity of Former Section 17942 As Applied to Ventas

█ Former section 17942 was enacted in 1994 as part of the Beverly-Killea Limited Liability Company Act (LLC Act),[8] which authorized the formation, operation, and regulation of LLC's within California. The LLC Act requires any LLC that registers with the Secretary of State to pay the annual minimum tax set forth in section 17941, and to pay a levy pursuant to former section 17942. Subdivision (a) of former section 17942 provides that in addition to the minimum tax, "every limited liability company subject to tax under Section 17941 shall pay annually to this state a fee equal to" specified amounts based upon the amount of "the total income from all sources reportable to this state for the taxable year."

FTB first asks us to determine whether application of the levy under former section 17942 to the income of Ventas, wherever earned and without apportionment according to the percentage of business or income attributable to activities within California, violated the Commerce Clause. We shall conclude that it did, and that former section 17942 is unconstitutional as applied to Ventas. We therefore need not, and do not, decide whether former section 17942 is unconstitutional on its face or whether it violates due process.[9]

---

[8] The LLC Act was codified as new title 2.5 of the Corporations Code (Corp. Code, § 17000 et seq.) with conforming amendments to the Revenue and Taxation Code and other codes.

[9] A statute should be found facially unconstitutional only if there are no circumstances under which it can be validly applied. (See *United States v. Salerno* (1987) 481 U.S. 739, 745

■ "The negative or dormant implication of the Commerce Clause prohibits state taxation [citation], or regulation [citation], that discriminates against or unduly burdens interstate commerce and thereby 'imped[es] free private trade in the national marketplace . . . .' " (*General Motors Corp. v. Tracy* (1997) 519 U.S. 278, 287 [136 L.Ed.2d 761, 117 S.Ct. 811].) State statutes imposing taxes on income earned outside the state, or imposing a tax on total income without apportionment to activities within the state, have long been held to violate the Commence Clause. (See, e.g., *Gwin, etc., Inc. v. Henneford* (1939) 305 U.S. 434, 439–440 [83 L.Ed. 272, 59 S.Ct. 325] [state tax "measured by the entire volume of the interstate commerce" in which taxpayer participates and "not apportioned to its activities within the state" violates the Commerce Clause]; *Greyhound Lines v. Mealey* (1948) 334 U.S. 653, 662–664 [92 L.Ed. 1633, 68 S.Ct. 1260] [tax on gross receipts from transportation violates Commerce Clause to extent receipts were attributable to activities outside the state].)

FTB contends that former section 17942 is not a tax, but a regulatory fee, and that as such the appropriate Commerce Clause analysis is the three-part balancing test outlined in *Pike v. Bruce Church, Inc.* (1970) 397 U.S. 137, 142 [25 L.Ed.2d 174, 90 S.Ct. 844] (*Pike*). FTB asserts that the levy imposed under former section 17942 would pass the *Pike* test because (1) the LLC Act effectuates a legitimate local public interest in promoting a new business form, preventing the flow of business and jobs from the state, and protecting Californians who deal with LLC's; (2) the effects of the levy on interstate commerce are only incidental and de minimis because it required Ventas to pay during the years in issue only a fraction of 1 percent of its total income; and (3) the local benefits Ventas derived from registering with the Secretary of State exceed the minimal burden of the levy.

FTB further contends that, even if the levy imposed by former section 17942 is a tax, it still does not violate the Commerce Clause under the four-part test set forth in *Complete Auto Transit, Inc. v. Brady* (1977) 430 U.S. 274, 279 [51 L.Ed.2d 326, 97 S.Ct. 1076] (*Complete Auto*). Specifically, FTB asserts the dispositive question in this case is whether former section 17942 satisfies the second prong of the *Complete Auto* test, i.e., is it fairly apportioned. Fair apportionment requires both "internal consistency"[10] and

[95 L.Ed.2d 697, 107 S.Ct. 2095]; *Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 678–679 [51 Cal.Rptr.3d 821].) FTB argues that former section 17942 may be constitutionally applied to other LLC's, including those formed and doing business solely within the state of California.

[10] "Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear." (*Oklahoma Tax Comm'n v. Jefferson Lines, Inc.* (1995) 514 U.S. 175, 185 [131 L.Ed.2d 261, 115 S.Ct. 1331] (*Jefferson Lines*).)

"external consistency."[11] (*Jefferson Lines, supra*, 514 U.S. at p. 185.) FTB contends that the internal consistency test is inapplicable, and that Ventas should have been required to demonstrate that the levy imposed by former section 17942 actually adversely impacts interstate commerce more than intrastate commerce.

FTB also contends that the levy imposed by former section 17942 is distinguishable from other state taxes found to violate the Commerce Clause because under the LLC Act, an LLC that registers in California may elect to be taxed as a corporation pursuant to a statutory scheme that does provide a method of apportionment. (§ 23038, subd. (b)(1).) Ventas instead elected to be subject to the levy under former section 17942. FTB asserts this election ameliorates the burden imposed on interstate commerce, and constitutes a waiver, or estops Ventas from challenging the constitutional validity of former section 17942.[12]

All of the foregoing arguments were carefully considered, thoroughly analyzed, and rejected by Division Five of this court in *Northwest, supra*, 159 Cal.App.4th 841. In that case Northwest Energetic Services (Northwest), an LLC organized under the laws of the State of Washington, registered as an LLC with the California Secretary of State pursuant to Corporations Code section 17451. It paid the $800 minimum tax imposed under section 17941, but failed to pay an amount imposed under former section 17942, based on an LLC's "total income from all sources reportable to this state for the taxable year." (Former § 17942, subd. (a).) Northwest had no California customers, made no deliveries in California, and had "no operations, property, inventory, employees, agents, independent contractors or place of business in California." (159 Cal.App.4th at p. 849.) When FTB notified Northwest that it owed $27,458.13 for amounts due for tax years 1997, 1999, 2000, and 2001, Northwest paid the $27,458.13 and cancelled its registration with the Secretary of State. After exhausting its administrative remedies, it filed a suit for refund. The trial court ruled that, as applied to Northwest, former section 17942 violated the Commerce Clause, and ordered a refund of the entire amount Northwest had paid for the years in issue. (159 Cal.App.4th at p. 850.)

---

[11] "External consistency . . . looks . . . to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." (*Jefferson Lines, supra*, 514 U.S. at p. 185.)

[12] We deferred ruling on Ventas's motion to strike the waiver argument, and other arguments from FTB's reply brief, on the grounds that the arguments were new issues raised for the first time in the reply. The motion to strike is hereby denied.

On appeal, FTB raised all the same arguments it does here. Division Five held that former section 17942 is a tax, not a regulatory fee[13] (*Northwest, supra*, 159 Cal.App.4th at pp. 857–861), and that it violates the Commerce Clause under *Complete Auto, supra*, 430 U.S. 274, because it is not fairly apportioned. (*Northwest*, at pp. 861–864.) The court held former section 17942 failed the internal consistency test for the following reason: "[I]f the Levy were replicated in every state, an LLC engaging in business in multiple states with the same total income as Northwest would pay the maximum levy in every state in which it did business or registered to do business. An LLC operating only in one state would pay the maximum levy only once. Thus, the Levy places a greater burden on interstate commerce than intrastate commerce." (159 Cal.App.4th at p. 862.)

The court rejected FTB's argument that the internal consistency test was inapplicable and that Northwest had to demonstrate by some other means that the tax burdens interstate commerce. It explained that the case upon which FTB relied, *American Trucking Assns., Inc. v. Michigan Pub. Serv. Comm'n* (2005) 545 U.S. 429 [162 L.Ed.2d 407, 125 S.Ct. 2419] (*American Trucking*), was distinguishable. (*Northwest, supra*, 159 Cal.App.4th at p. 862.) "The Michigan fee in *American Trucking* was a flat fee, 'which does *not* seek to tax a share of interstate transactions, which focuses upon *local* activity, and which is assessed evenhandedly.' [Citation.] Here, by contrast, the Levy is not a flat fee imposed on all LLC's for the privilege of doing business locally in California, but a percentage of the LLC's total *worldwide* income, which therefore *does* tax a share of interstate transactions. Moreover, the court in *American Trucking* did not *reject* the internal consistency requirement altogether. Instead, it found no Commerce Clause violation notwithstanding the absence of internal consistency, because the petitioners would incur intrastate (*local*) fees in multiple states only by engaging in local business in those states. Here, by contrast, an LLC incurs the Levy based on its total *worldwide* income merely by registering with the state, even if it does no business there." (*Northwest*, at p. 863.)

The court further observed that, as is also the case here, FTB advanced no argument addressing external consistency. (*Northwest, supra*, 159 Cal.App.4th at p. 864.) The court concluded that the levy imposed by former section 17942 also failed the external consistency test "[b]ecause the Levy is measured by the LLC's total income wherever earned, and not just what is earned in California, [and thus] the Levy 'reaches beyond that portion of

---

[13] Division Five further held that even if former section 17942 were a regulatory fee, it would violate the Commerce Clause under the balancing test articulated in *Pike, supra*, 397 U.S. 137. (*Northwest, supra*, 159 Cal.App.4th at pp. 865–866.)

value that is fairly attributable to economic activity within the taxing State.' " (*Northwest*, at p. 864, quoting *Jefferson Lines, supra*, 514 U.S. at p. 185.)

Finally, the court rejected FTB's voluntary choice arguments based upon the fact that Northwest could have elected to be taxed as a corporation, under a statutory scheme that, unlike former section 17942, provided a method for apportionment and thereby avoided taxation under former section 17942. The court declined to characterize Northwest's decision as consent to be taxed on all income without apportionment, or as a voluntary choice, because an election "to be taxed as a corporation rather than as a passthrough LLC would have more dramatic consequences. Among other things, such an election would require Northwest to make the same election with the Internal Revenue Service, thus changing the manner in which Northwest and its members would be taxed at the federal level, with likely similar changes in all the other states in which Northwest did business. Avoiding the double-taxation aspect of a corporation (by which the entity is taxed on profits and its members on distributions) is one of the hallmark benefits of an LLC. Indeed, in passing the LLC Act, our Legislature recognized this facet of LLC's as one of the major reasons for such interest in LLC's in the first place. The FTB now would have LLC's surrender this advantage not only in California, but in all other states in which the LLC pays taxes and on its federal tax returns as well, simply so California can impose a tax based on income generated *outside* of California. The idea that this could somehow ameliorate the burdens on interstate commerce, or insulate the Levy from scrutiny under the Commerce Clause altogether, is simply untenable. Nor do we think that LLC's—which our Legislature wanted to *attract* to California in passing the LLC Act—should be forced to endure an unconstitutional assessment merely because they proceeded under the auspices of a California statute (former § 17942)." (*Northwest, supra*, 159 Cal.App.4th at p. 868.)

The court concluded that, as applied to Northwest, former section 17942 violated the Commerce Clause and that Northwest, "which conducted no business in California, is entitled to a refund of the amounts it paid under former section 17942." (*Northwest, supra*, 159 Cal.App.4th at p. 868.) The FTB agreed in *Northwest* that the refund should be of the entire amount the LLC had paid for the years in issue because "none of its total income derived from California sources." (*Northwest*, at p. 868 & fn. 16.)[14] We find the reasoning in *Northwest* persuasive, adopt it as our own, and conclude that, as

---

[14] The court in *Northwest, supra*, 159 Cal.App.4th 841, also reversed the attorney fee award. It held that the trial court failed to provide adequate explanation or justification for upward adjustment of the lodestar figure of $219,566.95 to $3.5 million, and directed the trial court, if it chose to enhance the lodestar amount again on remand, to provide a more specific explanation of its reasons. (*Id.* at p. 882.)

applied to Ventas, former section 17942 violates the Commerce Clause to the extent that it fails to provide a method of fair apportionment.

## II.

### Remedy

FTB next raises two issues concerning the appropriate remedy that were not raised in *Northwest, supra*, 159 Cal.App.4th 841, because the LLC in that case did not conduct any business in California, and FTB did not dispute that Northwest was entitled to a refund of the entire amount it paid for the years in issue. In this case, Ventas conducted at least a portion of its business in California. Therefore, Ventas could have been required to pay a portion of the levy without violating the Commerce Clause had former section 17942 included a method of fair apportionment. The parties stipulated that if the apportionment methodology California uses for corporations (§ 25128 et seq.) were applied, Ventas's California apportionment percentage would have been 8.06 percent, 8.34 percent and 6.94 percent, respectively, for the years in issue.

In light of the foregoing facts, FTB argues that instead of ordering a refund of the entire amount of tax Ventas paid for the years in issue, the court should either: (1) judicially reform former section 17942 to preserve it against constitutional invalidity and apply it as reformed to Ventas; or (2) limit the amount of the refund in this case to the difference between the amount Ventas actually paid and the amount Ventas could have been taxed without violating the Commerce Clause using a method of fair apportionment. FTB asserts that the amount Ventas could have been taxed for the contested years using a method of fair apportionment can easily be determined by using the allocation and apportionment provisions of the Uniform Division of Income for Tax Purposes Act set forth in sections 25120 to 25139 and the applicable regulations. The parties have already stipulated that Ventas's California apportionment percentage would have been 8.06 percent, 8.34 percent and 6.94 percent, respectively, for the years in issue. FTB further contends that this measure of the refund is, in any event, now mandated by the new section 19394 added by Assembly Bill No. 198 (2007–2008 Reg. Sess.). Section 19394 specifies that if the levy under former section 17942 is "finally adjudged" to be unconstitutional, the remedy in any suit for refund that is not final shall be to recompute the tax in accordance with the apportionment methodology added to former section 17942 by Assembly Bill No. 198, and refund the difference.

Ventas contends that the judicial reformation FTB proposes is not an appropriate remedy because it is inconsistent with the legislative intent at the time former section 17942 was enacted. It further contends that when a state tax violates the Commerce Clause because it is not fairly apportioned, the state must refund the *entire* amount paid, even if a portion of the tax could have been collected without violating the Commerce Clause using a method of fair apportionment. Ventas further contends that the statutory changes enacted by Assembly Bill No. 198 (2007–2008 Reg. Sess.) are either invalid or inapplicable to this case because: (1) The changes constitute a *new* tax, and as such had to be approved by a two-thirds vote, pursuant to California Constitution, article XIII, section 3. Since it was not, Ventas asserts the changes made by Assembly Bill No. 198 are ineffective and invalid. (2) Application of section 19394 to any suit for refund that was not final as of the date of enactment is a retroactive application of the law that violates due process.

We shall conclude that FTB fails to establish the limited conditions that would support exercise of the power of judicial reformation, and shall decline to reform former section 17942 in the manner FTB suggests. We, however, also conclude that a refund of the entire amount Ventas paid pursuant to former section 17942 is not compelled by the due process clause, or by any principle of state law. A refund of the difference between the amount Ventas paid and the amount it would have paid based upon income derived from or attributable to California sources, using a method of fair apportionment, would fully cure the Commerce Clause violation. This remedy does not place an unreasonable burden on Ventas because the parties have already agreed what Ventas's California apportionment percentage would have been for the years in issue, if this apportionment methodology were used. We shall therefore reverse and remand to the trial court for further proceedings to determine the amount of the refund. In light of this disposition, we need not reach the question whether application of the changes made by Assembly Bill No. 198 (2007–2008 Reg. Sess.) after the judgment in this case was entered would violate the due process clause.

## 1. *Reformation.*

FTB argues that former section 17942 can and should be judicially reformed to cure the constitutional invalidity by requiring an LLC's income be sourced to California using the allocation and apportionment provisions of the Uniform Division of Income for Tax Purposes Act set forth in sections 25120 to 25139. It urges this court to judicially reform former section 17942 to so provide. The proposed reformation would essentially rewrite former

section 17942 in accordance with the changes added by Assembly Bill No. 198 (2007–2008 Reg. Sess.).

■ " '[A] court may reform—i.e., "rewrite"—a statute in order to preserve it against invalidation under the Constitution, when we can say with confidence that (i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred the reformed construction to invalidation of the statute.' " (*Ceridian Corp. v. Franchise Tax Bd.* (2000) 85 Cal.App.4th 875, 889 [102 Cal.Rptr.2d 611] (*Ceridian*).) "By applying these factors, courts may steer clear of 'judicial policymaking' in the guise of statutory reformation, and thereby avoid encroaching on the legislative function in violation of the separation of powers doctrine." (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 661 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (*Kopp*).) ■ The power of judicial reformation has typically been exercised in three categories of cases: "(i) cases concerning procedural safeguards required by the First Amendment and/or principles of procedural due process; (ii) cases concerning classifications underinclusive under the equal protection clause; and (iii) cases concerning otherwise vague or overbroad criminal statutes." (*Id.* at p. 629.)

■ In the context of cases involving tax statutes that violate the Commerce Clause, the courts have consistently declined to exercise the power of judicial reformation to cure the constitutional violation. For example, in *Ceridian*, the court declined FTB's request that it judicially reform a tax provision that violated the Commerce Clause by, among other things, allowing a deduction for insurance subsidiary dividends only to corporations domiciled in California. FTB suggested the court could reform the challenged statute by rewriting it also to allow non-California corporations to take the deduction. The court explained that the suggested reformation was not appropriate because the plain language of the deduction provision stated that it applies only to corporations " 'commercially domiciled' " in California. (*Ceridian, supra,* 85 Cal.App.4th at p. 889.) Since the provision was clear and unambiguous on its face, it could not be rewritten based upon divination of some contrary legislative intent from other sources. (*Ibid.*) The court further noted that even if it could reform the provisions to expand the availability of the deduction, "[t]he deductions thus more broadly allowed would still be calculated in accordance with a formula that we have determined violates the commerce clause. As [FTB] recognizes, attempting to rewrite subdivision (b) would involve us in precisely the type of judicial policymaking and encroachment on the legislative function in violation of the separation of powers doctrine, against which the *Kopp* court warned. [Citation.] Thus, reformation is not possible in this case." (*Ibid.*)

Similarly, in *City of Modesto v. National Med, Inc.* (2005) 128 Cal.App.4th 518 [27 Cal.Rptr.3d 215] (*City of Modesto*), a city filed suit to recover a tax deficiency assessed under a municipal license tax. The trial court held the license tax was not fairly apportioned to reflect the percentage of the business actually taking place within the taxing jurisdiction as required under the California constitution. (*Id.* at pp. 522–523.) The city amended the ordinance to include an apportionment mechanism, and asked the Court of Appeal to judicially reform the original ordinance in a similar manner. The court declined to do so. It explained: "[T]he original ordinance was adopted in 1958. Thus, it is not possible to divine the intent of that enacting body. Further, reforming the 1958 ordinance to comply with constitutional mandates requires adding a substantive change to the law. Such judicial policymaking and encroachment on the legislative function is improper." (*Id.* at p. 528.)

Nonetheless, FTB asserts that judicial reformation of former section 17942 is possible, without encroaching upon the legislative function, because the phrase "reportable to this state" as used in former section 17942 is, at least arguably, susceptible to the interpretation that it describes only "total income from all sources derived from or attributable to this state." Therefore, FTB reasons, the proposed reformation is not necessarily at odds with the plain language of former section 17942, and would be consistent with the legislative policy judgment underlying this legislation. FTB further suggests that if the Legislature knew that an unapportioned LLC tax would be declared unconstitutional, the Legislature would certainly have chosen to include an apportionment mechanism, because collection of *some* revenue would always be preferable to none.

■ We cannot say with confidence that the proposed reformation would be consistent with the legislative policy judgment underlying former section 17942, because the legislative history reflects that the Legislature actually considered, and rejected, a version including precisely the language the FTB now suggests. This rejected version based the tax imposed on "gross receipts . . . derived from or attributable to sources within this state." (Sen. Bill No. 469 (1993–1994 Reg. Sess.) § 15, as amended Sept. 10, 1993.) As the court in *Northwest* observed, it is not clear why this language was changed, but "[g]iven the oft-stated legislative desire to maintain revenue neutrality, a reasonable inference is that legislators were concerned that the revenue generated from a fee based only on receipts derived from or attributable to sources within this state would not be sufficient. In other words, California would lose money unless the 'fee' was imposed on non-California business." (*Northwest, supra,* 159 Cal.App.4th at p. 858, fn. 9.) FTB does not suggest an alternate explanation for the deletion of this language from the final version

of former section 17942 that would allow us to conclude FTB's proposed reformation "closely effectuates policy judgments clearly articulated by the enacting body" (*Kopp, supra*, 11 Cal.4th at p. 661) at the time former section 17942 was enacted.[15] The remedy of judicial reformation "is improper when the suggested reformation is *inconsistent* with the Legislature's intent, or when that intent *cannot be ascertained*." (*Kopp*, at p. 643.)

### 2. *Measure of Refund.*

FTB alternatively contends that the court erred by requiring it to refund the entire amount Ventas paid pursuant to former section 17942 for the years in issue. It argues that no principle of federal due process or of state law compels it to refund the entire amount Ventas paid for the years in issue. Instead, FTB argues that Ventas is only entitled to a refund of the difference between the amount it paid pursuant to former section 17942 and the portion that could have been collected consistent with the dictates of the Commerce Clause by apportioning the tax to income derived from or attributable to California sources. Ventas, on the other hand, asserts that in *McKesson Corp. v. Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18 [110 L.Ed.2d 17, 110 S.Ct. 2238] (*McKesson*), the court held that when a state tax violates the Commerce Clause because it is not fairly apportioned the *only* remedy consistent with federal due process is to refund the *entire* amount.

■ The appropriate remedy for collection of a tax in violation of the Commerce Clause is, in the first instance, a matter left to the state so long as the remedy it affords comports with federal due process. (*McKesson, supra*, 496 U.S. at p. 32, fn. 16.) In *McKesson*, a licensed wholesale distributor of alcoholic beverages filed a tax refund suit challenging Florida's liquor excise tax scheme on the ground that it discriminated against interstate commerce by giving special rate reductions for beverages that were manufactured from products grown in Florida. (*Id.* at pp. 22–24.) The Florida courts granted injunctive and declaratory relief enjoining future enforcement of the preferential rate reductions, thereby leaving all distributors subject to the liquor tax's nonpreferred rates, but denied McKesson's claim for a refund of at least " 'the difference between the disfavored product's tax rate and the favored product's tax rate.' " (*Id.* at p. 25.)

---

[15] The amendments and new section added by Assembly Bill No. 198 (2007–2008 Reg. Sess.) leave no doubt that the Legislature *now* intends to impose the tax only upon income derived from or attributable to California sources. FTB does not argue that this subsequent legislation sheds any light upon the Legislature's intent when it deleted this language from former section 17942, and we therefore express no opinion on that issue.

 The issue before the court in *McKesson, supra*, 496 U.S. 18, was not the measure of the refund, but rather whether due process required the state to provide *any* refund at all, or whether the state could remediate collection of tax in violation of the Commerce Clause retrospectively by other means, such as retroactive assessments upon taxpayers who had received preferential treatment. The court held that when a state requires a taxpayer to pay taxes first and raise objections to the tax in a "postdeprivation refund action," the state "must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a 'clear and certain remedy,' [citation] for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one." (*Id.* at p. 39, fn. omitted.) The court held the remedy must include some form of retrospective relief, but does not necessarily require that the state provide a refund.

 The court explained that where the tax is not invalid "in its entirety," but, as in the case before it, was unconstitutional only insofar as it operated in a manner that discriminated against interstate commerce, the state "retains flexibility in responding to this determination. Florida may reformulate and enforce the Liquor Tax during the contested tax period in any way that treats petitioner and its competitors in a manner consistent with the dictates of the Commerce Clause. Having done so, the State may retain the tax appropriately levied upon petitioner pursuant to this reformulated scheme because this retention would deprive petitioner of its property pursuant to a tax scheme that is *valid* under the Commerce Clause." (*McKesson, supra*, 496 U.S. at pp. 39–40.) Therefore, the court held that Florida could, consistent with due process, provide a remedy for the Commerce Clause violation of the excise tax in several ways. It could (1) refund to the taxpayer "the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reductions that its competitors actually received," (2) "assess and collect back taxes from petitioner's competitors who benefited from the rate reductions during the contested tax period, calibrating the retroactive assessment to create in hindsight a nondiscriminatory scheme," or (3) fashion a remedy consisting of "a partial refund to petitioner and a partial retroactive assessment of tax increases on favored competitors, so long as the resultant tax actually assessed during the contested tax period reflects a scheme that does not discriminate against interstate commerce." (496 U.S. at pp. 40–41.)

Ventas argues that *McKesson, supra*, 496 U.S. 18, further held that, in contrast to a tax that is discriminatory, where, as here, the tax violates the Commerce Clause because it is not fairly apportioned, the state has "no choice" (496 U.S. at p. 39) but to refund the entire amount of taxes paid, even if it is possible to calculate with reasonable certainty the amount the

taxpayer would have paid for the years in question if the tax had been fairly apportioned, without placing an undue burden on the taxpayer.[16]

Ventas's argument is based upon a misreading of the discussion in *McKesson, supra,* 496 U.S. 18, contrasting the range of remedies a state may offer when a state tax violates the Commerce Clause by, for example, taxing intrastate commerce at preferential rates, versus the more limited range of relief that could be offered to redress the collection of a state tax that violates the Commerce Clause because it is not fairly apportioned. In the course of determining whether the state was required to provide *any refund at all*, as opposed to some other form of retrospective relief, the court did draw a distinction between taxes that are "beyond the State's power to impose," and a tax such as the one before it that was "unconstitutional only insofar as it operated in a manner that discriminated against interstate commerce." (*McKesson, supra,* 496 U.S. at p. 39.) In the former circumstance, the court stated the "State would have had no choice but to 'undo' the unlawful deprivation by refunding the tax previously paid under duress . . . ." (*Ibid.*) The clearest example the court gave of such a tax was the collection of a tax on Indian lands that are immune from state taxation. (*Id.* at pp. 33, 39.) The state could not reformulate such a tax to cure its invalidity and enforce it as reformulated during the contested period because the object of the tax, i.e., Indian lands, was absolutely immune regardless of how the tax might be formulated. Therefore, in such a case, the state would have no alternative remedy but to refund the tax. The court did also cite *Atchison &c. Ry. Co. v. O'Connor* (1912) 223 U.S. 280 [56 L.Ed. 436, 32 S.Ct. 216] (*O'Connor*), invalidating a franchise tax most of which "was apportioned to business conducted wholly outside the State" (*McKesson,* at p. 32), as another example where the only remedial option is a refund. When a tax unduly burdens interstate commerce due to lack of apportionment, an alternative remedy, such as retroactive assessments upon other taxpayers in lieu of a refund, would not cure that type of Commerce Clause violation. The court's point, however, was simply that some type of refund would be the only remedy in such a case. It did not discuss what the *measure* of the refund should be, and certainly did not hold, or even imply, that a state would be required to

---

[16] We note that the distinction between taxes that are invalid because they are not fairly apportioned and those that are discriminatory can also be elusive because "[a] tax that unfairly apportions income from other States *is a form of discrimination* against interstate commerce." (*Armco Inc. v. Hardesty* (1984) 467 U.S. 638, 644 [81 L.Ed.2d 540, 104 S.Ct. 2620], italics added.) Similarly under California law a tax that is not fairly apportioned to reflect the percentage of business taking place within the taxing jurisdiction is also sometimes characterized as a tax that "unfairly discriminate[s]" against intercity businesses by placing a burden upon them that is not placed on entirely intracity businesses. (*City of Modesto, supra,* 128 Cal.App.4th at p. 525.)

provide a refund of the entire amount collected under such a state tax provision, even if the state could have collected some portion of the tax for the years in issue using a method of fair apportionment without violating the Commerce Clause. To the contrary, earlier in the opinion, when summarizing the holding in *O'Connor*, the court stated that "the railroad company was entitled to a refund *of the portion of the tax imposed on out-of-state activity*." (*McKesson*, at p. 32, italics added.) Thus, to the extent that the court made any reference at all to the *measure* of the refund, the court implied that the state was required to refund only the portion that could not be imposed without violating the Commerce Clause.[17] In any event, it certainly did not create any kind of categorical rule concerning the measure of a refund when a state tax violates the Commerce Clause because it is not fairly apportioned.

We conclude that, although *McKesson, supra*, 496 U.S. 18, does hold that when a tax violates the Commerce Clause because it is not fairly apportioned, a refund is the appropriate remedy, it does not support Ventas's assertion that the refund must be of the entire amount paid. *McKesson* held only that when a tax violates the Commerce Clause because it is not fairly apportioned, the state has "no choice" but to provide a refund because the Commerce Clause violation cannot be cured *by other means* such as retroactive assessments against those who were taxed at preferential rates. It did not, however, specify the *measure* of the refund that must be provided when a tax violates the commerce clause because it is not fairly apportioned.

We therefore look to several California decisions that have addressed the question of the appropriate measure of a refund in a tax refund suit when the tax collected is found to violate the Commerce Clause, or equivalent provisions under the state Constitution.[18]

---

[17] The tax in *O'Connor, supra*, 223 U.S. 280, was upon the privilege of doing business and consisted of 2 cents on every $1,000 of the corporation's capital stock. Failure to pay the tax resulted in forfeiture of the privilege of doing business. The court held the "tax is of the kind decided by this court to be unconstitutional, since the decision below in the present case, even if the temporary forfeiture of the right to do business declared by the statute be confined by construction, as it seems to have been below, to business wholly within the State." (*Id.* at p. 285.) At the time of the decision in *O'Connor*, the Commerce Clause was interpreted to preclude any state tax on interstate commerce, even if fairly apportioned, in effect creating a zone of immunity from state taxation. (See *Complete Auto, supra*, 430 U.S. at p. 278 [overruling *Spector Motor Service v. O'Connor* (1951) 340 U.S. 602 [95 L.Ed. 573, 71 S.Ct. 508] and related line of authority that "reflect[] an underlying philosophy that interstate commerce should enjoy a sort of 'free trade' immunity from state taxation"].)

[18] "Despite the absence of a specific 'commerce clause' in the California Constitution, the requirements of equal protection and due process proscribe local taxes that operate to unfairly discriminate against intercity businesses by subjecting them to a tax that is not fairly apportioned to reflect the percentage of the business actually taking place within the taxing jurisdiction." (*City of Modesto, supra*, 128 Cal.App.4th at p. 525.)

In *General Motors Corp. v. City and County of San Francisco* (1999) 69 Cal.App.4th 448 [81 Cal.Rptr.2d 544] (*General Motors*), this court held that General Motors was entitled to a refund of all taxes it had paid under a municipal ordinance that discriminated against General Motors and other out-of-city manufacturers because in-city manufacturers would be subject to only one tax upon gross receipts from the sale of goods whereas out-of-city manufacturers would be subject to "two taxes—a tax upon the portion of gross receipts attributable to selling activity within the City, and any tax upon gross receipts imposed by another municipality where the seller manufactures its goods." (*Id.* at p. 452.) Our determination that General Motors was entitled to a full refund was not, however, based upon categorizing the tax as violating the Commerce Clause because it was "discriminatory" or "unapportioned." Instead, we analyzed whether the specific remedy proposed by the city in lieu of a full refund satisfied the due process parameters for postdeprivation relief outlined in *McKesson, supra*, 496 U.S. 18. The city proposed to refund all selling taxes General Motors could prove it had paid on goods upon which another city had also assessed a manufacturing tax. We held that the proposed remedy failed *substantively* to cure the Commerce Clause violation because, among other reasons, it did not "fully eliminate the discrimination suffered by General Motors . . . because it would still be paying a selling tax to San Francisco while local manufacturers pay a manufacturing tax." (*General Motors*, at p. 456.) Moreover, *procedurally* the proposed remedy was less than the "clear and certain" relief *McKesson* requires, because it placed the burden on the taxpayer to demonstrate double taxation had actually occurred. Moreover, to meet this burden, General Motors would have been required to "produce documentation from 17 years ago that it was otherwise never required to maintain." (*General Motors*, at p. 455.) On those facts, we concluded the alternative remedy proposed by the city would not provide "clear and certain" relief, because it imposed an unreasonable burden of proof upon the taxpayer rendering the proffered remedy inadequate. Absent a reasonable, clear, and certain method of determining the amount of tax the city could have collected without violating the state and federal commerce provision and deducting that from the total amount of tax collected, we held the city was required to refund the entire tax payment General Motors had made under the challenged tax provision. (*Id.* at pp. 454–456, 461.)

In *Macy's Dept. Stores, Inc. v. City and County of San Francisco* (2006) 143 Cal.App.4th 1444 [50 Cal.Rptr.3d 79] (*Macy's*), Division Three of this court addressed the question whether *McKesson, supra*, 496 U.S. 18, or any principle of state law compelled the city to refund *all* of the business taxes Macy's had paid under a municipal tax scheme found to violate state and federal Commerce Clause provisions. The challenged tax required a business operating in San Francisco to calculate its tax liability based upon its payroll

expense, and again based upon gross receipts, and then to pay whichever amount was greater. (*Macy's*, at p. 1447.) It was undisputed on appeal that the tax failed the internal consistency test because it "could hypothetically discriminate against intercity taxpayers, who might be subject to tax under a payroll expense measure in one jurisdiction and under a gross receipts measure in another, unlike a local taxpayer, who would pay tax only to San Francisco under only one measure." (*Macy's*, at p. 1448.) The trial court had concluded that this court's decision in *General Motors, supra*, 69 Cal.App.4th 448, compelled it to order a refund of the entire amount Macy's had paid for the contested years, and the city appealed. (*Macy's*, at p. 1448.)

The Court of Appeal reversed. It held that the remedy the city proposed, consisting of a partial refund in an amount sufficient to remedy the hypothetical discrimination, effectively placed Macy's in the same position as a local taxpayer, and that no principle of due process or state law required that the city instead refund the entire amount Macy's had paid. (*Macy's, supra*, 143 Cal.App.4th at pp. 1451–1454.) Division Three correctly stated that this court's decision in *General Motors, supra*, 69 Cal.App.4th 448, did not establish a categorical rule that the only remedy is to provide a full refund.[19] (*Macy's*, at p. 1451.) An expert had calculated that Macy's would have paid 1.2 percent more than a hypothetical taxpayer with only local business, and Macy's did not dispute this estimate. (*Id.* at pp. 1448, fn. 5, 1451.) It therefore was possible to use the estimate to calculate the amount of tax Macy's had been required to pay that a hypothetical local taxpayer would not have had to pay, without placing the burden upon Macy's to prove this amount, or to come forward with documentation in support of its refund claim that it would not otherwise have had reason to keep. Division Three distinguished this court's holding in *General Motors* on these grounds. (*Macy's*, at pp. 1451–1452.) Division Three observed, "[T]here is no claim here that the City's proposed remedy is deficient because it is uncertain or would not eliminate the discriminatory effect" of the challenged tax, by placing Macy's in the same position as a local taxpayer. (*Id.* at p. 1451.) The court also rejected the argument that a full refund was required on the ground that the challenged tax provision was void, and therefore of no force and effect. (*Id.* at p. 1454.) Nor was a full refund compelled by article XIII, section

---

[19] When the court in *Macy's, supra*, 143 Cal.App.4th 1444, stated the case before it was "not a case where a full tax refund is required because the tax 'was beyond the State's power to impose, as was the unapportioned tax'" in *O'Connor, supra*, 223 U.S. 280 (*Macy's*, at p. 1452), it merely recognized the same distinction the court in *McKesson, supra*, 496 U.S. 18 drew between the appropriate remedy when a tax is invalid in its entirety because it is beyond the state's power to impose *under any formulation*, and one that is invalid only insofar as it discriminates against interstate commerce. In any event, any reference in *Macy's* to the appropriate measure of a refund when a tax is not fairly apportioned was dicta, and we do not construe it to create a categorical rule that in such a case the taxing authority has no choice but to refund the *entire* amount paid.

32 of the California Constitution, because that section merely "recognizes the taxpayer's right to refund of an illegal tax, as a corollary to the prohibition against enjoining the collection of any tax, but it does not address the proper measure of refund." (*Macy's*, at p. 1453.)

The court concluded that the measure of the refund the city proposed satisfied all the state and federal requirements of due process. "Macy's is entitled to be placed in a position equivalent to that occupied by local taxpaying businesses so it will have paid a valid measure of taxes. [Citation.] In this way, the City may limit Macy's tax refund to the amount necessary to remedy any discrimination from the City's former tandem tax. [Citation.] Macy's is not entitled to a full refund of all business taxes paid between 1995 and 1999. Such a refund would place Macy's in a more favorable position than a local taxpayer during the same period." (*Macy's, supra*, 143 Cal.App.4th at pp. 1454–1455.)

Finally, in *City of Modesto*, the court indirectly addressed some of these same due process principles, in a procedurally different context, when it declined to judicially reform a municipal tax ordinance to include a method of fair apportionment. The ordinance had been amended to cure the constitutional invalidity by adding a method of fair apportionment, but the court had found that the amendments applied prospectively only. The court explained that due process concerns were among its reasons for declining to judicially reform the ordinance to include a fair apportionment mechanism like the one added by the amendments: "Although here the disputed tax has not yet been collected, the amended ordinance places the burden on [the taxpayer] to prove which gross receipts should be excluded based on out-of-city activities. Thus, if we were to retroactively validate the tax by applying the apportionment provisions, we would be requiring [the taxpayer] to produce documentation from up to nine years ago that it otherwise was never required to maintain. If [the taxpayer] were unable to document its claimed out-of-city activities, the assessed deficiency would remain the same as it was under the unconstitutional tax. This is not a 'clear and certain remedy' but, rather, places an unreasonable and unfair burden on [the taxpayer]." (*City of Modesto, supra*, 128 Cal.App.4th at pp. 529–530.)

Due process concerns similar to those identified in *General Motors, supra*, 69 Cal.App.4th 448, and *City of Modesto, supra*, 128 Cal.App.4th 518, do not exist with respect to FTB's proposed remedy in this case. Ventas does not contend that the partial refund proposed by FTB would not substantively redress the Commerce Clause violation. FTB proposes only to retain that portion of the levy under former section 17942 that may be fairly apportioned to Ventas's in-state activity, and to refund the balance that would represent the amount collected in violation of the Commerce Clause. Using FTB's

measure of the refund does not create any procedural or practical burden for Ventas that would undermine the clarity or certainty of the remedy in a manner inconsistent with due process. The parties have already stipulated to Ventas's California apportionment percentage for each of the years in issue using California's apportionment methodology for corporations. Therefore, allowing the FTB to recalculate the levy for the years in issue will not require Ventas to bear any burden to prove the appropriate apportionment percentage, or to produce documentation in support of the calculation that it might not have retained. If FTB is allowed to recalculate the levy using the stipulated California apportionment percentages for the years in issue, to retain the portion of the levy thereby fairly apportioned to the state, and to refund the difference, Ventas will be placed in the same position it would have been in if it earned all of its income from California sources, or if the levy had been properly apportioned. We know of no other principle or state law of state or federal due process that would entitle it to a remedy that does more than that.[20]

We conclude that the court erred by ordering that Ventas was entitled to a full refund of the entire amount of tax it paid pursuant to former section 17942 for the years in issue. The court should instead have ordered a refund of the difference between the levy actually paid and the amount that could be collected without violating the Commerce Clause using a proper method of apportionment. Accordingly, we shall reverse the judgment to the extent that it orders FTB to refund the entire amount of taxes Ventas paid for the years in issue, and remand to the trial court for further proceedings to redetermine the amount of the refund, in accordance with the view expressed in this opinion.

## III.

### Attorney Fees

The foregoing disposition, reversing the judgment to the extent that it ordered a refund of the entire amount Ventas paid pursuant to former section 17942, requires that we also reverse the postjudgment award of attorney fees pursuant to Code of Civil Procedure section 1021.5, because we cannot say with certainty that the court would exercise its discretion the same way had Ventas not prevailed on its contention that it was entitled to a full

---

[20] Only Ventas's refund claim is before us, and our holding is based upon the particular facts in this case. Accordingly, we express no general opinion regarding the appropriate remedy in other cases. Since we are concerned here only with Ventas's refund claim, the possibility that the remedy FTB proposes could impose an unreasonable burden on a hypothetical taxpayer whose California apportionment percentage is less readily ascertainable, does not preclude application of the remedy in this case, where it is stipulated.

refund. For example, the trial court's determination that Ventas had demonstrated that a large ascertainable class of persons would significantly benefit from the litigation was based, at least in part, upon an estimate of the total amount of potential refunds that assumed LLC's that had some income attributable or derived from California sources would nonetheless be entitled to a full refund.[21] Similarly, the partial reversal of the underlying judgment could also affect the court's determination that it was appropriate to apply a 1.5 multiplier to the lodestar figure of $143,343.75. One of the factors the court weighed was that much of the work in this case was duplicative of the work in *Northwest, supra,* 159 Cal.App.4th 841, except for the issue of reformation and whether a full or partial refund was due. The court explicitly weighed the duplicative nature of the work factor against the "considerable benefits" secured by Ventas's litigation in determining that the 1.5 multiplier was reasonable. The trial court's assessment of the relative weight of these factors could also reasonably change in light of this court's determination that Ventas was not entitled to the full refund it had obtained from the trial court. Finally, because a "successful party" within the meaning of Code of Civil Procedure section 1021.5 is not the same as the definition of the "prevailing party" pursuant to Code of Civil Procedure section 1032, the partial reversal could conceivably also affect the court's discretionary determination that Ventas is a successful party for the purpose of a fee award.

We also briefly address FTB's contention that section 19717 is the exclusive means of recovering attorney fees in a tax refund suit, because if FTB were correct, Ventas would be ineligible for fees in *any* amount since it failed to file an appeal to the Board of Equalization. (§ 19717, subd. (b)(1).)[22] We therefore would simply reverse, rather than remand for further proceedings to allow the court to exercise its discretion pursuant to Code of Civil Procedure section 1021.5.

█ In *Northwest, supra,* 159 Cal.App.4th at pages 869–875, the court carefully considered and rejected each of the arguments FTB raises here in support of its contention that section 19717 is the exclusive means of recovering attorney fees in a tax refund suit. The court in *Northwest* ultimately concluded: "Attorney fees are not recoverable under Code of Civil

---

[21] The court relied upon FTB's lower estimate of the amount of potential refunds, but even FTB's estimate assumed LLC's that had some income attributable or derived from California sources would nonetheless be entitled to a refund of all tax paid pursuant to former section 17942.

[22] We hereby grant FTB's request that we take judicial notice of an excerpt from a federal Joint Committee on Taxation report describing Internal Revenue Code section 7430 as an exclusive provision for an award of litigation costs. For the same reasons stated by the court in *Northwest, supra,* 159 Cal.App.4th at page 874, we nonetheless reject FTB's argument that this legislative history supports the conclusion that the California Legislature intended section 19717 to be the exclusive means of recovering attorney fees in a tax refund suit.

Procedure section 1032, subdivision (b) unless they are recoverable under some contract, statute or law [citation]. Most tax refund cases are not pursuant to a contract, statute or law that would afford such relief; few would meet the standards of Code of Civil Procedure section 1021.5 or the common fund doctrine. Section 19717 therefore provides an alternative means of recovering attorney fees in the limited instance in which FTB's position is without substantial justification. [¶] Section 19717 and Code of Civil Procedure sections 1032, 1033.5, and 1021.5 are thus readily harmonized.
 Code of Civil Procedure section 1032, subdivision (b), in conjunction with Code of Civil Procedure section 1033.5, provides a general right to attorney fees where another statute, contract, or law authorizes such an award. One such statute is section 19717, which requires the movant to prove it was a prevailing party within the meaning of section 19717 and limits the movant's recovery as set forth therein. Another such statute is Code of Civil Procedure section 1021.5, which does not compel the movant to prove the requirements of section 19717, but instead requires the movant to establish that it was a 'successful party' in an action resulting in the 'enforcement of an important right affecting the public interest,' conferring a 'significant benefit . . . on the general public or a large class of persons.' [Citation.] Thus, section 19717 and Code of Civil Procedure section 1021.5 (and the common fund doctrine) provide different remedies befitting different situations." (*Northwest, supra*, at p. 875.)

For the foregoing reasons, we shall also reverse the order granting attorney fees pursuant to Code of Civil Procedure section 1021.5, and remand to allow the court to again exercise its discretion in light of our partial reversal of the underlying judgment. Nothing we have said should be construed as an expression of an opinion as to how that discretion should be exercised.

### CONCLUSION

The judgment is affirmed in part and reversed in part. We affirm the court's determination that, as applied to Ventas, former section 17942 violates the Commerce Clause, and that judicial reformation is not an appropriate remedy. We reverse the judgment only with respect to the amount of the refund due, and remand with directions to redetermine the amount, limiting the refund to the difference between the amount Ventas paid pursuant to former section 17942, and the amount Ventas would have been required to pay had the tax been fairly apportioned, as more fully described in this opinion.

The postjudgment order awarding attorney fees is also reversed, and the matter is remanded with directions that the court may redetermine eligibility and the amount of reasonable fees in light of our partial reversal of the judgment.

Each party shall bear its own costs on appeal.

Marchiano, P. J., and Swager, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 12, 2008, S166870. Baxter, J., Chin, J., and Corrigan, J., were of the opinion that the petition should be granted.