Filed 8/18/22 Elfin Forest Harmony Grove Town Council v. County of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ELFIN FOREST HARMONY GROVE TOWN COUNCIL et al., | D079222 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2018-00042927-CU-TT-CTL) |
| COUNTY OF SAN DIEGO, | |
| Defendant, | |
| RCS-HARMONY PARTNERS, LLC, | |
| Real Party in Interest and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of San Diego County, Katherine Bacal, Judge. Affirmed.

Richard A. Schulman, A Professional Corporation and Richard A. Schulman, for Real Party in Interest and Appellant.

Shute, Mihaly & Weinberger, Winter King, Tori Ballif Gibbons and Mindy K. Jian, for Plaintiffs and Respondents.

Appellant and real party in interest RCS-Harmony Partners, LLC (Harmony) appeals a postjudgment order awarding Code of Civil Procedure[1] section 1021.5 private attorney general fees to respondents Elfin Forest Harmony Grove Town Council, Endangered Habitats League, and Cleveland National Forest Foundation, after the trial court found merit to respondents' challenge under state planning/zoning law and the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) to the County of San Diego's (County) approval of a development project. The court entered its order during the pendency of Harmony's appeal from the judgment on the CEQA claims. On appeal, this court found merit in some of Harmony's claims but rejected others and remanded the matter to the trial court to modify its judgment.

On appeal from the postjudgment attorney fees and costs order, Harmony contends this court eliminated almost all of respondents' successes, and thus the order must be reversed and returned to the trial court for redetermination of appropriate fees. It contends that if we reach the order's merits, we must conclude the court abused its discretion in view of respondents' assertedly limited success in achieving their goals. Harmony further contends that in making its attorney fee determination the court should have considered the harms respondents' litigation caused by obstructing the provision of housing and weighed them against the benefits to the public. We hold automatic reversal is not required under these circumstances, and that this court may assess the impact of our appellate opinion on respondents' attorney fees claim. We reject Harmony's other contentions and affirm the postjudgment order.

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

FACTUAL AND PROCEDURAL BACKGROUND

By petition for writ of mandate and complaint for declaratory relief, respondents challenged County's approval of the Harmony Grove Village South project (the Project) and certification of the Project's environmental impact report (EIR) under CEQA. They alleged two causes of action: (1) violation of CEQA and (2) violation of state planning and zoning laws as well as the Subdivision Map Act. They also sought a judicial declaration that County's action in approving numerous general plan amendments for specified development was an abuse of discretion or otherwise failed to comply with the law.[2] According to the verified petition, the Project, located in a buffer zone between an urban area called Harmony Grove Village and an area of sensitive habitat, would develop 453 dwelling units, 5,000 square feet of commercial or civic use, and an onsite wastewater treatment facility. In part, respondents alleged the Project exceeded the maximum number of dwelling units and created dense, urban development instead of large rural lots, and rather than maintaining the homes on sewer systems, the Project required annexation into a sewer district. As for the first cause of action, respondents alleged that County and the Board of Supervisors committed many CEQA violations, including by certifying an EIR that was inadequate in analyzing and mitigating climate change/greenhouse gas emissions, air quality, biological resources, fire hazards, land use, traffic/transportation and emergency access, and failed to adequately consider cumulative and growth-

---

[2]    Declaratory relief is an equitable remedy, not a cause of action. (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 173.) The trial court sustained without leave to amend a demurrer to respondents' request for a judicial declaration, and thus respondents point out that in their attorney fees motion they did not seek section 1021.5 attorney fees for the time spent on that claim. Harmony does not challenge this assertion on appeal.

inducing Project impacts related to a general plan "Community Development Model."[3]  In their second cause of action, respondents alleged County violated state law by approving a project inconsistent with general plan policies and principles regarding placement of urban development, as well as the goals of reducing vehicle trips, protecting residents from hazards and providing affordable housing.  They prayed for a judgment directing County to vacate and set aside its certification of the EIR and Project approvals, as well as to comply with CEQA and state planning and zoning law, the Subdivision Map Act, and County's general plan and zoning code.  They sought a temporary stay and injunctive relief to stop County from taking action to implement the Project pending its compliance.

The trial court granted the petition and ordered County to set aside all Project approvals and the EIR's certification.  It rejected some of respondents' claims, ruling as speculative their claim that the Project was inconsistent with a Local Agency Formation Commission policy pertaining to sanitation district annexation, and finding respondents did not demonstrate that the Project was fundamentally inconsistent with the general plan community development model.  It ruled that because the EIR studied several alternative projects, it did not need to further consider the respondents' proposed alternative (Harmony Common), and respondents did not meet their burden to show County improperly rejected a "sewer alternative."  But

_____

[3]     Respondents also alleged County violated CEQA and its guidelines by relying on Project features to mitigate Project-related impacts, relying on ineffective, unenforceable, or unproven mitigation measures, failing to consider Project alternatives, adopting findings not supported by substantial evidence, treating the Project and other projects (referred to as Valiano and Otay 250), as a single project for purposes of approving general plan amendments, using unapproved consultants, and failing to respond to public comments.  They alleged County violated state law by failing to retain all records necessary for a complete administrative record.

4

the court agreed with respondents that the EIR relied on unsupported greenhouse gas mitigation measures and did not address certain fire safety issues or relied on unsupported fire evacuation measures. It ruled County failed to proceed in the manner required by CEQA by not including certain forecasts or analyses relevant to air quality impacts and failed to show the Project was consistent with a regional plan for growth and development. The court finally found the Project inconsistent with County's general plan's requirement that developers provide an affordable housing component when requesting a general plan amendment, and also conflicted with a community plan policy that Elfin Forest development be served only by septic systems for sewage management.

While Harmony's appeal from that judgment was pending, respondents moved for attorney fees and costs under section 1021.5. They argued they were the successful parties on the merits, enforced an important right affecting the public interest, conferred a significant benefit on the public through the litigation, and demonstrated the necessity and financial burden of private enforcement. They sought fees for all hours reasonably spent on the case as they had assertedly obtained the entire remedy sought, as well as a 1.5 multiplier, for a total request of $853,963.94 in fees and costs.

The trial court granted the motion in part, awarding respondents $765,402.60 in attorney fees (including an undisputed sum of $54,320 in fees for bringing the motion) and all of their requested $36,218.95 in costs. It found respondents were "successful parties in an action which affected the public interest of ensuring full disclosure and mitigation of significant environmental impacts and which benefitted the general public/large class of persons by addressing greenhouse gas, fire safety, air quality and affordable housing issues." The court declined to apply a multiplier, however, stating it

5

had taken into account the partially contingent nature of the case, the issues' complexity, and the exceptional skill in obtaining an exceptional public benefit when it applied an above average lodestar.[4]

On Harmony's appeal from the judgment, this court, reviewing the County's action, reached some conclusions different from the trial court. (*Elfin Forest Harmony Grove Town Council v. County of San Diego* (Oct. 14, 2021, D077611) [nonpub. opn.].) Like the trial court, we found flaws in the

---

[4] The lodestar is the number of hours reasonably expended multiplied by the reasonable hourly rate. (*Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334, 357 (*Gunther*).) The trial court's order awarding attorney fees states: "[T]he Court found for [respondents] on the claims that the [Project] approvals violated CEQA and state planning and zoning law. [Citation.] Thus, under section 1021.5 [respondents] are successful parties in an action which affected the public interest of ensuring full disclosure and mitigation of significant environmental impacts and which benefitted the general public/large class of persons by addressing greenhouse gas, fire safety, air quality and affordable housing issues. Additionally, the financial burden of private enforcement make[s] the award appropriate, in light of petitioners' prior administrative efforts and their non-profit status. [Citation.] Harmony['s]. . . arguments to the contrary are unpersuasive. Harmony . . . also argues the result of this case harms the public by delaying housing development and negatively impacting the state's housing goals. However, Harmony . . . did not cite any authority to support that this is a consideration that should be weighed when determining whether fees should be awarded in a CEQA case."

As to the amount of the award, the court ruled: "Here, [respondents] spent 1,334 hours over five-and-a-half years, not including the fees on fees. [Citation.] The claimed hours are supported by declarations and time records. [Citation.] [Respondents'] counsel also proposes a 5 [percent] reduction to account for staffing changes, and eliminated possible duplicative or excessive tangential hours. [¶] . . . [¶] . . . Harmony . . . argues the time [respondents] spent on other cases is excessive. [Citation.] Harmony['s] reliance on the amount of hours claimed in a different related case does not constitute identifying specific excessive time entries here. Further, because the cases were related, the work done on them impacted the present case. Moreover [respondents] provide adequate explanation and support for the hours."

Project's greenhouse gas mitigation measures and inconsistency with County's general plan as to affordable housing. However, contrary to the trial court, we held the EIR adequately addressed fire safety and evacuation, as well as the Project's consistency with County's regional air quality and transportation/development plans. We affirmed the judgment in part and reversed it in part, and remanded the matter for the court to issue a new writ of mandate and judgment and to conduct further proceedings consistent with our opinion. We ordered the parties to bear their own costs on appeal.[5]

DISCUSSION

I. *Section 1021.5 Attorney Fees: Legal Standards and Standard of Review*

" 'Section 1021.5 codifies the private attorney general doctrine the Supreme Court adopted in *Serrano v. Priest* (1977) 20 Cal.3d 25 . . . . [Citation.] " ' "The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." ' " ' [Citation.] ' "In short, section 1021.5 acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring." ' " (*Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154, 159 (*Save Our Heritage*).)

"Section 1021.5 permits a trial court to award attorney's fees to a successful party in any action that '(1) enforced an important public right, (2)

---

[5] In their opening brief on appeal, Harmony asserts that once this court's opinion became final, it proposed to respondents that they stipulate to reverse the attorney fee order and return the matter to the trial court, but respondents rejected the offer. Harmony provides no record citation for these events.

conferred a significant public benefit, and (3) is of a type that private enforcement was necessary, and the financial burden justifies subsidizing the successful party's attorneys.' [Citation.] 'Although the statute is phrased in permissive terms, a court's discretion to deny attorney's fees to a party that meets the statutory requirements of section 1021.5 is limited. [Citation.] Unless special circumstances would render an award of section 1021.5 fees *unjust*, fees must be awarded under the statute where the statutory criteria are met.' " (*Burgess v. Coronado Unified School District* (2020) 59 Cal.App.5th 1, 7; see also *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.)

The term "successful party" in section 1021.5 is synonymous with a prevailing party. (*Graham v. Daimler Chrysler Corp.* (2004) 34 Cal.4th 553, 571; *Save Our Heritage*, *supra*, 11 Cal.App.5th at p. 160.) The term "means the party to litigation that achieves its objectives." (*Graham*, at p. 571; *Save Our Heritage*, at p. 160.) The California Supreme Court has taken a "broad, pragmatic" view of what constitutes a successful party under this law. (*Graham*, at p. 565; *Department of Water Resources Environmental Impact Cases* (2022) 79 Cal.App.5th 556, 571.) " 'In determining whether a plaintiff is a successful party for purposes of section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution." ' " (*Graham*, at p. 566.) "The trial court ' " 'must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award' under . . . section 1021.5." ' " (*Department of Water Resources*, at p. 571, quoting *Graham*, at p. 566; see also *Woodland Hills Residents Assn. Inc. v. City Council* (1979) 23 Cal.3d 917, 938.)

8

" 'It is settled, however, that a party need not prevail on every claim presented in an action in order to be considered a successful party within the meaning of . . . section [1021.5].' [Citation.]  A party who ' " ' "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit" ' " ' [citation] may be considered a prevailing party ' " ' "for attorneys' fees purposes." ' " ' [Citation.]  'The significance of the . . . issue was a matter for the trial court's judgment.' " (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 982 (*Sweetwater Union*).)  To discern whether a significant benefit has been bestowed on the general public or a large class of persons, the trial court determines the significance of the benefit, as well as the size of the class receiving the benefit, "from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills Residents Assn. v. City Council, supra*, 23 Cal.3d at p. 940.)  The necessity and financial burden requirement focuses on two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys.  (*Conservatorship of Whitley, supra*, 50 Cal.4th at pp. 1214–1215.)

Generally, we review the trial court's decision whether to award section 1021.5 attorney fees for abuse of discretion.  (*Save Our Heritage, supra*, 11 Cal.App.5th at p. 160.)  However, where resolution of the question turns primarily on interpretations of section 1021.5 and applicable case authorities, we review the matter de novo as a question of law.  (*Ibid.*)

9

## II. *Automatic Reversal of the Attorney Fees Award is Not Warranted for the Limited Reversal on the Merits*

Harmony contends that this court's decision on the merits requires us to reverse the postjudgment attorney fees and costs order and return the issue of fees and costs to the trial court. It relies on the settled principle that an order awarding fees falls with reversal of the judgment on which it is based. (See *Gunther*, *supra*, 72 Cal.App.5th 334, 358; *Shirvanyan v. Los Angeles Community College Dist.* (2020) 59 Cal.App.5th 82, 107; *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1027 ["the award of costs necessarily falls with the judgment"]; *Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284.) According to Harmony, "reversal is appropriate, if not commanded, when appellate activity changes or eliminates the premises of a fee award." It maintains that the appellate briefing should have been unnecessary once our prior opinion became final as the case law is "simple and long-established," and because respondents did not stipulate to reverse the order after the appeal's resolution, they should be denied fees on the appeal of the merits and on this appeal.

Respondents disagree. They point out this court reversed the underlying order only in part, upholding the trial court's determination on their causes of action for County's CEQA and state planning/zoning law violations. They argue that though the trial court agreed with more of their theories than this court, both this court and the lower court concluded the Project approvals violated CEQA and the planning and zoning law. Respondents maintain their success was not limited or partial, but they prevailed entirely both in the lower court and on appeal on those two claims, leaving no basis to modify, much less overturn, the attorney fee order.

A complete reversal of a judgment or order would of course nullify an accompanying attorney fee award. (See *Shirvanyan v. Los Angeles Community College Dist.*, *supra*, 59 Cal.App.5th at p. 107; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1054; *Allen v. Smith*, *supra*, 94 Cal.App.4th at p. 1284.) But as respondents state, the circumstances here involve a "limited reversal" (*Gunther*, *supra*, 72 Cal.App.5th at p. 359) of the order. That is, we upheld the trial court's order in some respects, but reversed it in others. As respondents correctly point out, this court has held that in the event of a limited reversal on the merits, automatic reversal of an attorney fee award is not mandated; we remand for the trial court to consider anew the propriety of attorney fees "unless we can say with certainty the court would have exercised its discretion the same way had the successful party not prevailed on the issue on which we reverse." (*Id.*, at p. 359, citing *Ventas Finance I, LLC v. Franchise Tax Bd.* (2008) 165 Cal.App.4th 1207, 1233–1235 (*Ventas*); see *Boatworks, LLC v. City of Alameda* (2019) 35 Cal.App.5th 290, 307.)

*Gunther* and *Ventas* analyzed limited reversals to reach different conclusions on the associated attorney fee awards in those cases. In *Gunther*, a panel of this court in a Private Attorneys General Act (PAGA) case rejected the defendant's argument that federal law preempted state law pertaining to wage statements, but concluded the trial court had erred in awarding the plaintiff over $25 million in heightened civil penalties. (*Gunther*, *supra*, 72 Cal.App.5th at pp. 340–341.) We remanded the matter to the trial court to redetermine the penalty amount under a different PAGA provision. (*Id.* at pp. 340, 348.) The defendant argued that reversal of the heightened civil penalties required reversal of an ensuing attorney fee award in its entirety. (*Id.* at p. 358.) We acknowledged the proposition that an attorney fee order

11

falls with reversal of the underlying judgment. (*Ibid*.) But citing *Ventas*, *supra*, 165 Cal.App.4th 1207, we explained in the event of a limited reversal, we must assess whether a reviewing court could say with certainty the lower court would have exercised its discretion in the same way had the successful party not prevailed on the reversed issue. (*Gunther*, at p. 359.) Applying that standard, we rejected the defendant's argument, as well as the argument that the amount of fees was unreasonable because the plaintiff had achieved only limited success: "The record supports a conclusion that a recalculation of PAGA penalties will not affect [plaintiff's] ' "degree of success" ' as it relates to the attorney's fees award. Thus, the attorney's fees order is unaffected by the trial court's error in calculating PAGA penalties." (*Id*. at p. 358.) This court explained that the reversal was limited to the civil penalties, and other than that issue, the appeal "did not change [plaintiffs'] success in this litigation. . . . As a result of this litigation, the aggrieved employees will obtain the information necessary to independently ensure they receive all compensation earned and owed. That the trial court here awarded civil penalties under the wrong statute does not materially impact the degree of Gunther's success . . . ." (*Id*. at p. 359.)

In *Ventas*, a limited liability company (Ventas) sought a refund for taxes paid to the Franchise Tax Board (FTB), arguing their imposition violated the [Constitution's] Commerce and Due Process clauses. (*Ventas*, *supra*, 165 Cal.App.4th at p. 1213.) The trial court agreed and ruled Ventas was entitled to a full tax refund. (*Id*. at p. 1214.) Though Ventas had incurred about $143,000 in attorney fees, it sought $30 million in fees under sections 1021.5 and 1032 on the theory that if the court's decision were upheld, thousands of limited liability companies could obtain over a billion dollars in refunds in suits brought by the same attorneys. (*Ibid*.) Applying a

12

1.5 multiplier for the benefits conferred by the litigation, counsel's skill, and the limited novelty of the work, the trial court awarded $215,016 in attorney fees. (*Id*. at pp. 1215–1216.)

The appellate court agreed that the taxes paid violated the Commerce Clause. (*Ventas*, *supra*, 165 Cal.App.4th at p. 1221.) However, it rejected Ventas's argument that the tax refund had to be the entire amount paid (*id*. at pp. 1229, 1233), holding the trial court should instead have ordered a refund of the difference between the money actually paid and the lawful amount that could be collected using a proper apportionment method. (*Id*. at p. 1233.) This partial reversal of the judgment, the appellate court held, required reversal of the postjudgment section 1021.5 attorney fee award because it could not "say with certainty that the [trial] court would exercise its discretion in the same way had Ventas not prevailed on its contention that it was entitled to a full refund." (*Id*. at pp. 1233–1234, see also *id*. at p. 1212.) It pointed out the partial reversal might affect the court's assessment of significant benefit, which was based in part on the amount of the refund; the court's application of a 1.5 multiplier in part based on a weighing of duplicative work against the " 'considerable benefits' " received; and the fact a successful party under section 1021.5 was not the same as a

prevailing party under section 1032. (*Id.* at p. 1234.)[6] The court remanded the matter to allow the lower court to again exercise its discretion in light of the partial reversal of the underlying judgment. (*Id.* at p. 1235.)

Given the limited reversal in this case, we turn to the question presented in both *Gunther* and *Ventas*: whether we can say with certainty the lower court would have exercised its discretion in the same way had respondents not prevailed on the reversed issues, allowing us to leave the attorney fees award intact. (*Gunther, supra,* 72 Cal.App.5th at p. 359; *Ventas, supra,* 165 Cal.App.4th at pp. 1233–1234.) In doing so, we keep in mind the principle that a plaintiff can prevail on any significant issue that achieves some of the benefit despite losses on other issues and still be a successful party within the meaning of section 1021.5. (*Sweetwater Union, supra,* 36 Cal.App.5th at p. 982.) We further consider that a limited reversal

---

6       The *Ventas* court said: "For example, the trial court's determination that Ventas had demonstrated that a large ascertainable class of persons would significantly benefit from the litigation was based, at least in part, upon an estimate of the total amount of potential refunds that assumed LLC's that had some income attributable or derived from California sources would nonetheless be entitled to a full refund. Similarly, the partial reversal of the underlying judgment could also affect the court's determination that it was appropriate to apply a 1.5 multiplier to the lodestar figure of $143,343.75. One of the factors the court weighed was that much of the work in this case was duplicative of the work in [another case], except for the issue of reformation and whether a full or partial refund was due. The court explicitly weighed the duplicative nature of the work factor against the 'considerable benefits' secured by Ventas's litigation in determining that the 1.5 multiplier was reasonable. The trial court's assessment of the relative weight of these factors could also reasonably change in light of this court's determination that Ventas was not entitled to the full refund it had obtained from the trial court. Finally, because a 'successful party' within the meaning of . . . section 1021.5 is not the same as the definition of the 'prevailing party' pursuant to . . . section 1032, the partial reversal could conceivably also affect the court's discretionary determination that Ventas is a successful party for the purpose of a fee award." (*Ventas, supra,* 165 Cal.App.4th at p. 1234.)

14

does not necessarily change the respondents' degree of success. (*Gunther*, at pp. 358–359.)

III. *Respondents Were Successful on Both Claims and Achieved Their Goal of Setting Aside the EIR and Project Approval*

It is true that " 'a reduced fee award is appropriate when a claimant achieves only limited success' " (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989–990), and that an appellate reversal of some of the relief sought on one claim would warrant returning the matter to the trial court to reassess whether the litigation conferred a significant benefit. (*Ventas, supra,* 165 Cal.App.4th at pp. 1212, 1233–1234.) But this is not a case of partial success. Our reversal as to some of respondents' theories as to the EIR's inadequacy or how County's approval violated CEQA does not materially affect the degree of respondents' success on both of their causes of action. That is, there was no change in the *result* they sought: to vacate and set aside the EIR and the Project's approval.

Our conclusion that the lower court erred in finding merit to some of respondents' theories encompassed in their causes of action does not affect the attorney fees order, which is based on respondents' success on both of its causes of action. The trial court ruled those claims resulted in significant benefit to the general public by "ensuring full disclosure and mitigation of significant environmental impacts," and "addressing greenhouse gas [and] affordable housing issues." They also preserved the integrity of planning and zoning laws. Litigation brought to enforce CEQA provisions, as well as zoning laws, involves important rights affecting the public interest for purposes of section 1021.5. (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 612; *La Mirada Avenue Neighborhood Assn. v. Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th

15

1149, 1159 [requiring adherence to zoning laws furthers a significant public policy, and " 'concern[s] "a vital public interest" ' "], quoting *Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1263.) Fee awards should not be reduced simply because a plaintiff failed to prevail on every contention raised in their lawsuit. (*Sweetwater Union*, *supra*, 36 Cal.App.5th at p. 997; see also *Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 235 (*EPIC*) [where a party pursued only one claim for relief—invalidity of a "sustained yield plan" related to logging of timberland—and succeeded on that claim, the fact the reviewing court did not adopt all of its contentions in support of its claim did not require reduction in the amount of attorney fees].) " 'Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of . . . certain grounds is not a sufficient reason for reducing a fee. The result is what matters.' " (*Sweetwater Union*, *supra*, at p. 997.)

We conclude under the circumstances here, our reversal did not change respondents' degree of success, and thus "the court would have exercised its discretion the same way had [respondents] not prevailed on the issue[s] on which we reverse[d]." (*Gunther*, *supra*, 72 Cal.App.5th at p. 359.) Notably, unlike *Ventas*, the trial court here did not include a multiplier, so there is no need to assess whether any asserted difference in benefits achieved warranted a change in the lodestar. Respondents here obtained the same litigation outcome despite the failure of some of their theories.

Further, because this matter turns on the effect of our appellate opinion, this court "is in at least as good a position as the trial court" to judge how it impacts the section 1021.5 attorney fee analysis. (Accord, *EPIC*, *supra*, 190 Cal.App.4th at pp. 229–230.) In *EPIC*, the appellate court assessed the impact of a California Supreme Court opinion and its " 'legal

16

effects' " on the question of whether litigation challenging the validity of approval of a sustained yield plan related to logging timberland conferred a significant benefit on the general public. (*Id*. at p. 230.) Though the Court of Appeal had upheld regulatory approval of the plan (*id*. at p. 226), the California Supreme Court invalidated it because it was not a single, consolidated document the approving agency and the public could use in monitoring compliance with the plan's provisions. (*Id*. at pp. 233–234.) As a result, the "appellate proceedings in th[e] case . . . altered the circumstances [the court] must consider in determining the gains that have resulted from this case" such that the appellate court was "better positioned to make the substantial benefit determination than is the trial court, and [it] owe[d] it no deference on this question." (*Id*. at pp. 230–231.)[7]

Like in *EPIC*, our appellate opinion altered the circumstances so as to make this court better positioned to decide how it impacted the attorney fee analysis. But unlike the California Supreme Court's ruling in *EPIC*, our opinion merely reversed some of the legal theories respondents presented within their causes of action, which still achieved their sought-after result. The litigation still conferred a significant benefit on the public within the meaning of section 1021.5, as the areas found inadequate—greenhouse gas emissions and affordable housing—involve important environmental and public policy considerations. (Accord *EPIC*, *supra*, 190 Cal.App.4th at p. 234;

---

7       In *EPIC*, *supra*, 190 Cal.App.4th 217, the appellate court ultimately held the litigation conferred a significant benefit because submitting an adequate plan for approval and exercising greater care in preparing future plans would enhance effective public review of future logging and increase participation in environmental decisionmaking, as well as improve the approving agency's procedures. (*Id*. at p. 234, see also *ibid*. ["extent of the public benefit 'need not be great' to justify an attorney fee award" and high court's "holding regarding necessity of creating a single, integrated [plan] qualifie[d] as a significant benefit"].)

*Center for Biological Diversity v. County of San Bernardino*, *supra*, 185 Cal.App.4th at p. 895 [significant benefit may be recognized simply from effectuation of a fundamental statutory policy; finding significant benefit prong met where court found the final EIR inadequate as to air quality and water supply, important environmental considerations].)  And, because respondents obtained all of the results they sought on two successful causes of action, our failure to adopt some of their contentions did not require reduction of the fee award.  (*EPIC*, *supra*, at pp. 244–245 [holding that the single cause of action of one of the parties (the Steelworkers) challenging the sustained yield plan did not involve related and unrelated claims and, in the end, they obtained all the results they sought; "In light of the result, the Supreme Court's failure to adopt some of the contentions the Steelworkers advance in support of their claim does not require reduction of the fee award"].)

The appellate court in *EPIC* nevertheless remanded the matter to the trial court to assess the level of success or " ' "significance of the overall relief obtained by the plaintiff[s] in relation to the hours reasonably expended on the litigation." ' " (*EPIC*, *supra*, 190 Cal.App.4th at p. 239, quoting *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 414 .)  But this was because the Court of Appeal found both successful and unsuccessful claims and applied a test used in cases of limited success.  (*EPIC*, at pp. 239– 240.)  Acknowledging that the agencies argued the respondents—even the fully successful Steelworkers—should not be compensated for hours spent on litigating unsuccessful theories, it left resolution of those " 'factual matters' " to the trial court on remand.  (*Id.* at p. 247.)  The Court of Appeal cited *Harman*, at p. 418, *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268,

274 (*Sundance*), and a federal district court case from a federal Court of Appeals of the District of Columbia Circuit[8] in reaching this decision.

We are not persuaded that this portion of *EPIC* was the correct result, at least as to the Steelworkers, who achieved complete success. *Harman* involved partially prevailing plaintiffs: plaintiffs who had both successful and unsuccessful claims, unlike respondents here who succeeded on their two claims. (*Harman v. City and County of San Francisco*, *supra*, 158 Cal.App.4th at pp. 416–418.) In *Sundance*, the successful plaintiffs in a case challenging procedures for incarceration of public inebriates asserted the court erroneously omitted some 458 hours of attorney time spent on legal theories on which they did not prevail. (*Sundance v. Municipal Court*, *supra*, 192 Cal.App.3d at p. 271.) The appellate court in *Sundance* elected to leave it to the trial court to decide whether the successful plaintiff reasonably expended time and incurred fees on an unsuccessful legal theory. (*Id.* at p. 274.) At the same time, it observed that section 1021.5 "simply states that awards are to be made to successful parties, with no mention of excluding compensation for the successful parties' unsuccessful legal theories." (*Id.* at p. 273.) To the extent *EPIC* and *Sundance* are inconsistent with our holding, we do not follow them.

Harmony's arguments to the contrary are unavailing. It maintains respondents failed to achieve dozens of goals, and also failed in an effort to

---

8      In that case, *American Petroleum Institute v. U.S. E.P.A.* (D.C. Cir. 1996) 72 F.3d 907, 912, the court stated that a single claim might be "so frivolous" as to make all time spent on it unreasonable, but pointed out a frivolousness argument was not made on appeal. (*Id.* at p. 912.) We are not bound by federal circuit court of appeal decisions. (*Caliber Paving Company, Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 186.) In any event, as in *American Petroleum*, Harmony does not argue respondents' claims were frivolous.

"ban" the project or correct the EIR in multiple respects. It urges us to remand the matter and direct the trial court to adjust for these factors in setting attorney fees. But as respondents point out, the claim mischaracterizes the record; their requested relief was not to forever stop the project, and such relief is legally unavailable in any event. (See, e.g., *La Mirada Avenue Neighborhood Assn. v. Hollywood v. City of Los Angeles*, *supra*, 22 Cal.App.5th at pp. 1159, 1160 [goal of setting aside project approval is not one to "stop[] the Project forevermore" and "petitioner cannot seek (and a court cannot award) such 'now-and-forevermore' relief"].)

Harmony also contends that "[w]hen an environmental document 'could be repaired,' 'the correction of which was not likely to change the project,' a court can deny or greatly reduce a fee award." It asserts respondents had a "huge list of major changes" or corrections to the project that were "goals, not just theories," and respondents failed on all but two. In making this argument, Harmony cites to *Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329, which does not alter our conclusion. In that case, the petitioners lost five causes of action, but succeeded in obtaining a writ rescinding a warehouse facility's approval until a mitigated negative declaration was revised to correct CEQA defects. (*Id.* at pp. 331–332.) The trial court, however, denied a request for section 1021.5 attorney fees, ruling the petitioners "were only successful in one small regard" and "did not obtain the outcome they desired." (*Id.* at p. 333.) The Court of Appeal affirmed, acknowledging it was bound to defer to the lower court's evaluation of the significance of the litigation's benefit and only reverse if the trial court was " 'clearly wrong.' " (*Id.* at p. 334.) In upholding the denial of attorney fees, the appellate court observed the trial court "felt the [CEQA] inadequacy was a 'minute blemish' that could be repaired" without preparing an EIR and that

20

the petitioner "did not establish a precedent that applied statewide; rather, it successfully asserted a defect in CEQA's process, the correction of which was not likely to change the project." (*Id.* at p. 335.)

Unlike in *Concerned Citizens of La Habra,* here, respondents' successful claims did not assert a "minute blemish" lacking a statewide precedent. (*Concerned Citizens of La Habra v. City of La Habra, supra,* 131 Cal.App.4th at p. 335; accord *Center for Biological Diversity v. County of San Bernardino*, *supra*, 185 Cal.App.4th at p. 895 [finding *Concerned Citizens of La Habra* inapposite for the same reason].) Nothing in that case compels us to conclude the lower court would exercise its discretion to award attorney fees any differently on respondents' two successful causes of action in which they obtained their sought-after relief.

Harmony does not otherwise meaningfully discuss or challenge the financial burden criterion, or the trial court's calculation of an "above-average" lodestar rate. We presume the correctness of the court's attorney fee order, and do not disturb those determinations.

IV. *Consideration and Balancing of Benefits with Harms the Litigation Caused*

Harmony's final argument for reversal is that the trial court abused its discretion by failing to consider the harm caused by respondents' litigation as part of the question whether they were entitled to fees at all or so as to apply a diminishing multiplier. Harmony maintains the lawsuit and resulting appeal "have delayed for years the construction and occupancy of vitally needed housing," and that this court should either disregard the contrary decision in *EPIC*, *supra*, 190 Cal.App.4th 217 or interpret it to permit such balancing of the harms and benefits both in determining the lodestar and considering a multiplier. Harmony asserts that if we determine any award is

21

proper, we must reverse and remand for the trial court to consider these issues.

We reject the contention. In *EPIC*, the appellate court rejected the regulatory agencies' argument " 'that a court's inquiry into significant benefit must balance the benefits that both parties conferred on the public through the litigation, to determine whether there was any *net significant benefit* bestowed on the public by [respondents].' " (*EPIC*, *supra*, 190 Cal.App.4th at p. 231.) The agencies sought to compare the question to the type of assessment a court makes in deciding whether to issue a preliminary injunction, and asked the appellate court to " 'make clear that the courts must balance the respective equities of the benefits and detriments conferred by each party to the suit, and deny fees if on balance no net benefit has been conferred by the [respondents] on a large class of individuals or the general public.' " (*Ibid.*)

We agree with the *EPIC* court's observation that nothing in section 1021.5's text supports the argument: "The statute asks whether the successful party's action has conferred a 'significant benefit' [citation], not, as the Agencies would have it, a "net significant benefit.' " (*EPIC*, *supra*, 190 Cal.App.4th at p. 231.) As in *EPIC*, "[w]e are disinclined to adopt a construction of the statute that 'neither the context nor the language of section 1021.5 demands.' " (*Ibid.*)

Harmony nevertheless points out that the *EPIC* court suggested such balancing may be appropriate to determine the *amount* of fees, or adjustments to the lodestar amount. (See *EPIC*, *supra*, 190 Cal.App.4th at p. 233 ["To the extent the Agencies rely on their success on a number of issues in the Supreme Court, their argument is not properly viewed as an attack on respondents' *entitlement* to attorney fees, but as an argument that the

lodestar *amount* should be reduced because respondents achieved less than complete success in this litigation"].)

As stated, unlike some of the parties in *EPIC*, respondents here did not achieve only limited success on their claims.  It is not necessary to address the point further, for we hold that even if such balancing is appropriate in determining the amount of fees, Harmony has not demonstrated any assumed harm from respondents' litigation would impact the attorney fees analysis.  As stated above, the trial court denied Harmony's request to take judicial notice of the Governor's executive order on which Harmony relies in making its contention.  Harmony does not meaningfully challenge the court's evidentiary ruling.[9]  Further, respondents did not seek to entirely bar the project from proceeding such that it would result in no new housing.  Finally, as respondents point out, their litigation successfully challenged the project's failure to provide *affordable* housing and this court upheld the trial court's ruling in that respect.  Thus, by requiring County to comply with its general plan's affordable housing requirement, respondents furthered legislative housing goals.  (See Gov. Code, § 65589.5(a)(2)(A), (B) ["California has a housing supply and affordability crisis of historic proportions"; "While the causes of this crisis are multiple and complex, the absence of meaningful and

---

[9]    In a footnote, Harmony acknowledges the trial court "questioned the authenticity" of the executive order, and asserts "neither the content nor the authenticity of this Executive Order should be in dispute."  This cursory argument is insufficient to demonstrate error, particularly as we presume the correctness of the court's ruling.  In its reply brief, Harmony cites to various Internet web pages from "chapman.edu," "email.ojo.com" and the San Diego Union Tribune for various propositions, including that housing is the object of most CEQA litigation.  It does not state whether the trial court considered these matters, and does not ask us to take judicial notice of them.  We decline to do so.

effective policy reforms to significantly enhance the approval and supply of housing affordable to Californians of all income levels is a key factor"].)

DISPOSITION

The postjudgment order is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.