Filed 8/30/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SUTTER'S PLACE, INC., | H046146 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 2013-1-CV-258057) |
| v. | |
| CITY OF SAN JOSE et al., | |
| Defendants and Respondents. | |

Plaintiff Sutter's Place, Inc., operates a cardroom gambling business in the City of San Jose under the name Bay 101 Casino. The city regulates cardrooms through its Division of Gaming Control. Plaintiff sued the city and the Division of Gaming Control (Division) to challenge the annual cardroom regulation fee the city charges plaintiff and the only other cardroom gambling business in the city, Casino M8trix. Among other things, plaintiff alleged that the cardroom regulation fee is an unconstitutional tax imposed without the required voter approval (Cal. Const., art. XIII C, § 1, subd. (e)) and that its imposition violates plaintiff's federal constitutional right to due process. After a lengthy bench trial, the trial court concluded the cardroom regulation fee is a valid charge imposed for reasonable regulatory costs; that the amount of the fee is no more than necessary to cover the reasonable costs of the governmental activity; and that the allocation of those costs bears a fair or reasonable relationship to plaintiff's burdens on or benefits from the city's regulatory activity.

Plaintiff argues the trial court failed to consider whether all costs included in the cardroom regulation fee fall within the relevant constitutional exception (Cal. Const.,

art. XIII C, § 1, subd. (e)(3)); the trial court failed to conduct an individualized determination of the reasonableness of the fee's allocation between the two cardrooms; the equal allocation of the fee between the cardrooms is not fair or reasonable; the trial court abused its discretion by excluding certain expert testimony; and the trial court should have permitted trial on a separate federal constitutional procedural due process challenge to the fee. Plaintiff also contends the errors were cumulatively prejudicial, and argues the trial court's award of costs to the city must be reversed.

As we will explain, substantial evidence supports the trial court's determination that equally allocating the cardroom regulation fee between the two cardrooms is fair and reasonable. But we will reverse the judgment and remand the matter for the trial court to determine whether the cardroom regulation fee includes charges outside the relevant constitutional exception, and for further proceedings on plaintiff's cause of action alleging a due process violation.

## I.    TRIAL COURT PROCEEDINGS

We base our factual summary on the trial court's detailed statement of decision. Two businesses are licensed to operate as cardrooms in the City of San Jose: Casino M8trix and plaintiff Bay 101. The term "cardroom" "typically denotes California-allowed gambling, which is primarily card games of chance, rather than roulette or other Nevada-type gambling." The two cardrooms have had an equal number of tables since the 1990's. Since June 2010, each cardroom has been allowed 49 tables, which are permitted to operate 24 hours per day, 365 days per year.

Plaintiff must pay defendants three distinct charges each year: a voter approved special tax (around $8 million annually, depending on cardroom income in a given year); a cardroom permit fee (about $1,500 per year); and a cardroom regulation fee. The cardroom regulation fee is the focus of this action.

Title 16 of the City of San Jose Municipal Code governs cardrooms.[1] Section 16.30.060(B) provides that a "cardroom regulation fee as set forth in the schedule of fees established by resolution of the city council shall be paid to the City of San José by the cardroom permittee." The municipal code does not further define the purpose or scope of the cardroom regulation fee.

The amount of the cardroom regulation fee changes each fiscal year and is allocated equally between the two cardrooms. For the seven fiscal years that are the basis of this lawsuit, plaintiff paid defendants a cardroom regulation fee between $826,871 and $1,012,142 per year.

In the operative fourth supplemental complaint, plaintiff alleged four causes of action challenging the cardroom regulation fee for fiscal years 2011–2012 through 2017–2018. The first cause of action alleged the cardroom regulation fee is an unconstitutional general tax imposed without majority voter approval. (Cal. Const., art. XIII C, §§ 1, 2.) The second cause of action alleged the cardroom regulation fee is an unconstitutional special tax imposed without two-thirds voter approval. (Cal. Const., art. XIII C, §§ 1, 2; art. XIII A, § 4.) The third cause of action alleged plaintiff's federal constitutional right to due process was violated by defendants' imposition and implementation of the cardroom regulation fee. (42 U.S.C. § 1983.) The fourth cause of action sought a judicial declaration that the cardroom regulation fee is an unconstitutional tax.

A bench trial took place over multiple months in 2018, after which the trial court issued a detailed statement of decision. The court framed the three things defendants were required to prove as follows: (1) the cardroom regulation fee is for a regulatory function; (2) the amount of the fee is no higher than necessary to regulate; and (3) the

---

[1] Defendants' request for judicial notice of Title 16 of the City of San Jose Municipal Code is granted, as relevant material properly noticed in the trial court. (Evid. Code, § 459, subd. (a).) Defendants' request for judicial notice of an ordinance and certain election results is denied as irrelevant.

equal allocation between the two cardrooms reflects a fair or reasonable relationship to the benefit to plaintiff or the burden created by plaintiff.

The trial court found the cardroom regulation fee was imposed for a regulatory function. The cardroom regulation fee is calculated at the start of each fiscal year as a prospective estimate and is designed to "charge no more than necessary to record 100 percent of the City of San Jose's cost of operating the cardroom regulation program." The goal is to "have a 'zero sum balance' each year," such that the city will neither make nor lose money through its regulatory activities. If the cardroom regulation fee calculated and imposed for a given fiscal year does not cover all regulatory costs, the city absorbs the overage and does not pass it on to the cardrooms; if the cardroom regulation fee exceeds the year's actual costs, the city issues a refund or credit to the cardrooms. In all but two of the seven fiscal years identified, the cardroom regulation fee was less than the city's "actual total costs of regulating the cardrooms." The trial court found that "[g]oing to Sacramento and responding to Access to Public Records requests are within the City's regulatory function" and that even if those activities were not regulatory functions, "they are small issues to the greater question of whether the regulatory program in the aggregate was reasonable." The court also found that travel to Sacramento to discuss gaming regulation consisted of "one or two incidents over one or two decades."

The trial court found the cardroom regulation fee was not higher than necessary to regulate the cardrooms. The cardroom regulation fee includes the estimated costs of Division personnel, the Division's non-personnel expenses, city-wide overhead allocated to the Division, and legal services provided by the city attorney's office to support the gaming regulatory program. Division employees track their time using one of two "Cost Centers or Responsibility Centers": RC 110 for overall gaming regulation and enforcement, and RC 111 for "receiving, evaluating, processing, and granting/denying employee permits." (Underscoring omitted.) The trial court found that systemic miscoding occurred for multiple years, with employees using the general RC 110 cost

4

center for all time entries. One employee testified she did not even know RC 111 existed. But the court found the miscoding irrelevant because all employee time was spent on gaming regulation. For city attorney's office employees, time was not recorded in hourly increments, but was determined based on the estimated percentage of time each employee spent supporting the gaming regulatory program.

The court found that equal allocation of the cardroom regulation fee between the two cardrooms represented a fair or reasonable relationship to each cardroom's benefits and burdens. It found that while some work by city employees directly benefited one versus the other casino, "most of the work benefitted both casinos." The court found that the gaming regulations equally benefited Casino M8trix and Bay 101 because the regulatory program allows each cardroom to operate the same number of gaming tables. The court noted the cardroom regulations allow both cardrooms to operate an "otherwise prohibited gambling business, protected from further outside competition." The trial court found the cardrooms' equal number of tables also represent a substantially equal burden on the community through the "inherent dangers and societal problems associated with gambling." The court acknowledged testimony by city employees that they generally spent more time on permits for Casino M8trix. But the court also found the "evidence supports that in some months and in some years there were more regulatory costs attributable" to plaintiff Bay 101, such as the year when plaintiff built and moved into a new casino complex. Notwithstanding some fluctuation in the burden each casino placed on the government activity, the court concluded the equal allocation reflects a reasonable relationship to the cardrooms' respective burdens on the city's regulatory oversight.

The trial court granted defendants $44,349.42 in costs, and denied their request for attorney fees. The parties filed opening and respondent's briefs in 2020. The appeal was then stayed while the parties pursued settlement until 2023, when this court denied a further stay request and ordered that briefing be completed.

5

## II.  DISCUSSION

"Under the California Constitution, as amended by a series of voter initiatives, local government taxes, fees, charges, and other exactions are subject to several requirements and restrictions." (*City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1199 (*San Buenaventura*).) This case involves amendments to article XIII C of the California Constitution (Article XIII C), passed by the voters in 2010 as Proposition 26. (*San Buenaventura*, at p. 1200.) Article XIII C, section 1, subdivision (e) defines a " 'tax' " as "any levy, charge, or exaction of any kind imposed by a local government." (Art. XIII C, § 1, subd. (e).) Defendants do not dispute that the cardroom regulation fee is a levy, charge, or exaction imposed by a local government—it is therefore a tax unless an express exception applies. We independently review whether a charge falls within an Article XIII C, subdivision (e) exception. (*City of San Buenaventura v. United Water Conservation Dist.* (2022) 79 Cal.App.5th 110, 119.) In doing so, we "presume the appealed judgment is correct and do not decide disputed issues of fact." (*Ibid.*) If the trial court's decision is supported by substantial evidence, the judgment must be upheld even if the record also contains contradictory evidence. (*Id.* at p. 120; accord *Boyd v. Central Coast Community Energy* (2023) 96 Cal.App.5th 136, 142 (*Boyd*).)

The exception at issue in this case applies to a "charge imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and audits, enforcing agricultural marketing orders, and the administrative enforcement and adjudication thereof." (Art. XIII C, § 1, subd. (e)(3).) "The local government bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (Art. XIII C,

6

§ 1, subd. (e); *San Buenaventura*, *supra*, 3 Cal.5th at p. 1214 ["To qualify as a nontax 'fee' under article XIII C, as amended, a charge must satisfy *both* the requirement that it be fixed in an amount that is 'no more than necessary to cover the reasonable costs of the governmental activity,' *and* the requirement that 'the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity.' "].)

Plaintiff contends the cardroom regulation fee impermissibly includes costs for functions other than those specifically identified in Article XIII C, section 1, subdivision (e)(3). Plaintiff further contends that dividing the cardroom regulation fee equally between the two establishments does not bear a fair or reasonable relationship to their respective burdens on, or benefits received from, the governmental activity. We note that plaintiff's opening brief does not argue that the cardroom regulation fee amount exceeds the reasonable costs of the governmental activity (except, of course, for challenging *all* costs associated with activities falling outside the exception in Article XIII C, section 1, subdivision (e)(3)). To the extent plaintiff attempts to otherwise challenge the fee amount for the first time in its reply brief, the issue has been forfeited. (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115.)

**A. GOVERNMENT ACTIVITIES INCLUDED IN THE CARDROOM REGULATION FEE**

Plaintiff argues the "trial court erred as a matter of law in failing to determine whether each of the challenged activities qualified under the plain language" of the constitution. In the trial court, plaintiff challenged four categories of activity included in calculating the fee: legislative activities (including work to amend Title 16 of the municipal code and travel to Sacramento to testify before the California Legislature); responding to requests under the California Public Records Act (Gov. Code, § 7920.000 et seq.); Gaming Control Division staff time spent on litigation; and tax monitoring activities.

The first step in determining whether the cardroom regulation fee is a valid charge and not a tax requires the city to show that the fee is a "charge imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and audits, ... and the administrative enforcement and adjudication thereof." (Art. XIII C, § 1, subd. (e)(3).) Before trial, the court issued written in limine rulings, including that the "first issue of whether the cost is for a regulatory function ... does not require a specific test." The trial court stated that "San Jose either does or does not perform a regulatory function," such that the particular activities were "not the heart of the litigation" because defendants were "regulating [plaintiff] and charging for that regulation." According to the trial court, the "dispute lies in whether the charges were reasonably related to the cost of that regulation." In its eventual statement of decision, the trial court again expressed the view that reviewing the purpose of the fee "does not require a specific test." The court found that the cardroom regulation fee funded "appropriate specific regulatory functions."

We conclude the trial court's analysis was incorrect on this point. Contrary to the trial court's findings, the constitution does include a specific test: the government entity must show that the fee at issue is a "charge imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and audits, ... and the administrative enforcement and adjudication thereof." (Art. XIII C, § 1, subd. (e)(3).) The trial court's broad conclusion that the cardroom regulation fee funded appropriate regulatory functions failed to address the prescribed scope of the exception. It is not enough to show that the charge reflects the government's "reasonable regulatory costs"; the government must also show that the costs are incurred in performing only permissible *activities*. We note in this regard that Article XIII C, section 1, subdivision (e)(3) describes activities of an individual rather than programmatic nature.

8

We also conclude the error was prejudicial. (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161 ["To establish prejudice, a party must show 'a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached.' "].) The trial court found that the cardroom regulation fee was designed "to recover 100 percent of the city of San Jose's cost of operating the cardroom regulation program." That regulatory purpose is broader than the express exception in Article XIII C, section 1, subdivision (e)(3). There may be costs associated with "operating the cardroom regulation program" that do not fit within the constitutional exception. Given the broadly stated purpose of the cardroom regulation fee and the narrower exception found in the later-approved constitutional provision, plaintiff has demonstrated a reasonable probability of a more favorable result had the trial court applied the correct standard.

Plaintiff urges that all activities in the four identified categories fall outside the exception. But we are not prepared to say, as a matter of law, that activities in those categories can never meet the exception. (Art. XIII C, § 1, subd. (e)(3).) On remand, the trial court must review specific activities and associated costs within the four categories plaintiff has identified to determine whether they relate to issuing licenses and permits; performing investigations, inspections, and audits; or the administrative enforcement and adjudication thereof.

### B. EQUAL ALLOCATION BETWEEN THE TWO CARDROOMS

Plaintiff challenges the trial court's findings that equal allocation of the cardroom regulation fee between the two cardrooms bore a fair or reasonable relationship to their respective governmental burdens or benefits. (Art. XIII C, § 1, subd. (e).) Plaintiff argues both that the trial court applied the wrong legal standard in making its decision, and that the trial court's decision is not supported by substantial evidence.

### 1. The Trial Court Individually Evaluated the Allocation

The trial court's extensive statement of decision demonstrates that it properly engaged in an individual evaluation of regulatory benefits and burdens. (*Newhall County Water Dist. v. Castaic Lake Water Agency* (2016) 243 Cal.App.4th 1430, 1443 ["Where charges for a government service or product are to be allocated among only four payors, the only rational method of evaluating their burdens on, or benefits received from, the governmental activity, is individually, payor by payor."].) In discussing each cardroom's burden on the regulatory program, the trial court found that although "M8trix had more transience in employees and thus more need for permitting," there was "also evidence that casino employees bounced back and forth between working at the two competing gaming companies." The court also found that "in some months and in some years there were more regulatory costs attributable to Bay 101 as opposed to M8trix," citing the year that plaintiff built a new casino complex and moved to the new location. The court also found that each cardroom benefited equally because the regulatory program allows each cardroom to earn profit by operating the same number of gaming tables without the threat of competition from additional cardrooms. We are satisfied that the trial court properly understood and conducted an individualized determination of each cardroom's burden on, and benefits from, the regulatory system.

### 2. Substantial Evidence Supports the Trial Court's Equal Benefit Finding

Article XIII C, section 1, subdivision (e) requires that the manner in which "costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." Article XIII C thus allows a regulatory fee to be allocated based on *either* a payor's burdens on or the benefits received from government activity. We focus our analysis on whether substantial evidence supports the trial court's benefit finding. (*Boyd*, *supra*, 96 Cal.App.5th at p. 142.)

Our Supreme Court interpreted identical allocation language from a different constitutional provision (about fees imposed by the state) in *California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1048 & 1050 (*CBIA*)[2]; see California Constitution, article XIII A, section 3, subdivision (d) ["The State bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity."].)  The court noted that regulatory fees need not have a precise cost-fee ratio.  (*CBIA*, at p. 1052.)  Because regulatory fees are not easily correlated to specific, ascertainable costs, "an 'inherent component of reasonableness in this context is flexibility.' "  (*Ibid.*)  The *CBIA* court observed that so long as " 'there is a reasonable basis in the record for the manner in which the fee is allocated among those responsible for paying it,' a regulatory fee will not be deemed an unconstitutional tax."  (*Ibid.*)

Plaintiff provides no persuasive justification against interpreting Article XIII C consistently with the *CBIA* court's interpretation of Article XIII A.  Defendants therefore bore the burden in the trial court to demonstrate a reasonable basis for the manner in which the cardroom regulation fee was allocated between the two cardrooms.  Defendants had some measure of flexibility in making that allocation, and the cardroom regulation fee was not required to have a precise cost-fee ratio.  We review for substantial evidence the trial court's decision that equal allocation of the cardroom regulation fee

---

[2]  The Supreme Court determined that the plaintiff in *CBIA* had forfeited the argument that the government bore the burden of proof in the trial court.  (*CBIA*, *supra*, 4 Cal.5th at p. 1050.)  But the "parties agree[d] that the fees must not exceed the reasonable costs of the permit program, must not be levied for unrelated revenue purposes, and must be allocated in a reasonable manner."  (*Ibid.*)

bore a fair or reasonable relationship to the benefits plaintiff received from the government activity. (*Boyd*, *supra*, 96 Cal.App.5th at p. 142.)

Based on the trial evidence, the trial court found that before 2010 defendants allocated costs on a per table basis through what was called a table fee. They divided responsibility for regulatory costs equally between the two cardrooms because both cardrooms had the same number of tables. Local voters approved an increase in 2010 from 40 tables to 49 tables each for plaintiff and M8trix. Defendants continued allocating regulatory costs equally between the two cardrooms, but moved from table fees to a single cardroom regulation fee. The court found that "[c]ard tables are the measuring device of the cardroom industry." Each table "brings great value and revenue to the casino." The court noted that some Division work "could be said to have directly benefitted a particular casino, while most of the work benefitted both casinos." It went on to find plaintiff and M8trix received the "exact same benefit" from paying the cardroom regulation fee: "permission to operate 49 gaming tables, 24 hours per day, 365 days per year and protection from further competition." On that basis the trial court concluded that equal allocation of the cardroom regulation fee bore a fair or reasonable relationship to the benefits received from the governmental activity.

The trial court's finding is supported by substantial evidence. The evidence showed the cardroom regulation fee was tied to the number of tables each cardroom is allowed to operate: it originated as a per-table fee and was converted to a per-cardroom fee when voters decided to increase the number of tables allowed for each cardroom. Bay 101 and M8trix operate an equal number of tables. Plaintiff points to nothing in the record to contradict the concept that permission to operate an equal number of tables affords equal economic opportunity. Indeed, plaintiff's own gaming expert acknowledged that the number of tables operated by a cardroom is "one measure" of the gaming opportunities that a cardroom offers to the public. The trial court was entitled to credit that testimony, and was not obliged to credit the expert's further opinion that

12

defendants should have used other measures in addition to the number of tables in determining how to allocate the cardroom regulation fee. Plaintiff notes the number of allowable tables is determined independently from the amount of the cardroom regulation fee. But calculation and allocation are different questions. Even if the number of tables does not translate precisely to equal economic opportunity, the constitution requires only a "fair or reasonable" relationship to the benefits of the funded governmental activity. (Art. XIII C, § 1, subd. (e).)

Plaintiff argues "[n]either the City nor the trial court point to any evidence that an equal number of tables translates to an equal business opportunity." But a judgment is presumed correct and error must be affirmatively shown. (*CBIA*, *supra*, 4 Cal.5th at p. 1050; *Equilon Enterprises LLC v. Board of Equalization* (2010) 189 Cal.App.4th 865, 881.) The evidence we have summarized supports the trial court's decision, and plaintiff does not identify any evidence that compels a different conclusion. Although plaintiff notes that "factors besides the number of tables could influence the extent of a cardroom's business opportunity," we will not reverse a judgment supported by substantial evidence merely on a showing that a different trier of fact could have reached a different conclusion based on the same evidentiary record. (*Lobo v. Tamco* (2014) 230 Cal.App.4th 438, 442.)

Plaintiff asserts that the benefit of its economic opportunity to operate is already charged and accounted for through the separate cardroom *permit* fee, which the trial court found was "about $1,500 per year." The trial court could rationally conclude that plaintiff receives more than $1,500 in annual benefit from being allowed to operate one of only two cardrooms in the city. As the trial court observed, without defendants' regulatory activities (paid for through the cardroom *regulation* fee at issue), plaintiff could not the operate a business. Because substantial evidence supports the trial court's benefit findings, we do not reach arguments about the cardrooms' respective burdens on the city.

13

## C. EXPERT TESTIMONY

Plaintiff contends the trial court abused its discretion when it limited the scope of plaintiff's expert John Steele's testimony. Plaintiff disclosed its intention to have John Steele testify as an expert on the "legal and ethical requirements for attorney timekeeping, industry standards and standard of care for attorney timekeeping, and the attorney timekeeping practices of the San Jose City Attorney's Office." Steele testified at a deposition that his understanding was that plaintiff "is challenging attorney's fees assessed against it." He stated he had reviewed materials related to this case as well as a case "establishing that in-house employee lawyers inside corporations can seek attorney's fees when attorney's fees are provided for." And he expressed his "overarching opinion is I've never seen such inadequate support for a claim for attorney's fees in all the years I've been doing the law governing the lawyers."

The trial court granted in part defendants' in limine motion to exclude Steele's testimony at trial. It allowed Steele to "testify to the value of lawyer services in general" and to "testify that attorneys in general know how to, and can, assess what is their hourly rates for their services (a way that a city attorney could have reported the partial cost of their work to San Jose's regulatory agency)." But the court determined Steele "cannot testify that San Jose should have charged 'attorney fees' to Bay 101 because there is no relevance to 'attorney fees' in this case." Nor was he allowed to testify about the legal and ethical requirements for attorney timekeeping, industry standards, or the standard of care for attorney timekeeping. The court reasoned that the case was about the reasonable costs of attorney services rather than attorney's fees. The court concluded that testimony about the legal and ethical requirements for attorney timekeeping was not relevant because there was no attorney-client relationship at issue in the case.

We review the trial court's decision for abuse of discretion (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773), and see no abuse of discretion. The cardroom regulation fee included the costs of deputy city attorney time,

14

calculated as a percentage of each deputy's salary and benefits.  Rather than tracking work in timed increments, the city attorney's office employees provided an estimated percentage of their time spent supporting the gaming regulatory program.  There is no indication that defendants sought to recoup market rate attorney's fees as part of the cardroom regulation fee.  The trial court could reasonably conclude that Steele's testimony about attorney's fee claims would be irrelevant to the court's task of deciding whether the costs for attorney time were reasonable.

Even assuming error, it would be harmless.  (*People v. Watson* (1956) 46 Cal.2d 818, 836 [error related to admitting or excluding evidence is reviewed for whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)  The trial court determined the legal services costs were fair and reasonable, and as plaintiff acknowledges, the "value of legal services performed in a case is a matter in which the trial court has its own expertise." (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623.)  Steele's testimony was therefore not necessary for the trial court to decide the case, nor would the court have been obliged to credit that testimony.  Plaintiff has not demonstrated a reasonable probability of a more favorable result had the trial court declined to limit Steele's testimony.

### D.  CUMULATIVE PREJUDICE

Plaintiff argues the errors it identifies were cumulatively prejudicial.  California courts have granted a new civil trial where "the cumulative effect of the errors was unquestionably to make it 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error[s].' " (*Johnson v. Tosco Corp.* (1991) 1 Cal.App.4th 123, 141, citing *People v. Watson*, *supra*, 46 Cal.2d at p. 836; see also *Delzell v. Day* (1950) 36 Cal.2d 349, 351.)  Plaintiff asserts but has not demonstrated cumulative prejudice, as the only error we have identified is the trial court's

15

failure to properly apply the test for whether the cardroom regulation fee is a tax, and the issue will be returned to the trial court for further proceedings.

### E. PLAINTIFF IS NOT ENTITLED TO A FULL REFUND

We invited supplemental briefing about the proper remedy if on remand the trial court determines that the cardroom regulation fee included costs not permitted under Article XIII C, section 1, subdivision (e)(3) of the California Constitution. The parties direct us to cases involving the refund of taxes that violated the federal commerce clause by discriminating against certain taxpayers. (Citing *Ventas Finance I, LLC v. Franchise Tax Bd.* (2008) 165 Cal.App.4th 1207 (*Ventas*); *Macy's Dept. Stores, Inc. v. City and County of San Francisco* (2006) 143 Cal.App.4th 1444 (*Macy's*); *General Motors Corp. v. City & County of San Francisco* (1999) 69 Cal.App.4th 448 (*General Motors*).) Although this case does not involve a similar violation, we find the opinions instructive regarding the measure of a refund due when an otherwise valid charge includes an unpermitted amount. We note in this regard the plain language of Article XIII C, section 1, subdivision (e) that a "levy, charge, or exaction of any kind [] imposed by a local government" is a tax unless it meets one of the subdivision (e) exceptions.

In *Ventas*, the trial court concluded that a tax imposed against a taxpayer based on total income instead of being apportioned to income attributable to California sources violated the commerce clause of the federal constitution (*Ventas*, *supra*, 165 Cal.App.4th at p. 1211–1212), and ordered the Franchise Tax Board to refund the entire amount of the tax. The appellate court reversed, finding that "neither federal due process nor any principle of California law require[d]" a full refund. (*Id.* at p. 1212.) The *Ventas* court noted the "appropriate remedy for collection of a tax in violation of the Commerce Clause is, in the first instance, a matter left to the state so long as the remedy it affords comports with federal due process." (*Id.* at p. 1226, citing *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Florida* (1990) 496 U.S. 18, 32, fn. 16 (*McKesson*).) The remedy is flexible, and can include a

16

"refund to the taxpayer [of] 'the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reductions that its competitors actually received.' " (*Ventas,* at p. 1227.) The court also considered California authorities and concluded none required a full refund. (*Id.* at pp. 1230–1233; citing *Macy's*, *supra*, 143 Cal.App.4th at pp. 1451–1454 [reversing full tax refund and determining partial refund was appropriate].) The court found that the Franchise Tax Board's proposal to recalculate and retain only that portion of the levy that could be fairly apportioned to the taxpayer's in-state activity "does not create any procedural or practical burden for [the taxpayer] that would undermine the clarity or certainty of the remedy in a manner inconsistent with due process." (*Ventas,* at p. 1233.) *Ventas* concluded the taxpayer was entitled only to "be placed in the same position it would have been in if it earned all of its income from California sources." (*Ibid.*)

We are persuaded that Article XIII C does not require the city to refund the entire cardroom regulation fee based on the inclusion of certain unpermitted costs. The city will bear the burden on remand to demonstrate that the cardroom regulation fee included only costs covered by the relevant exception. (Art. XIII C, § 1, subd. (e) ["The local government bears the burden of proving ... that a levy, charge, or other exaction is not a tax."].) We acknowledge that the precise amount of unpermitted costs in the cardroom regulation fee is less certain than the excess tax in *Ventas* where there was no dispute as to the excess amount. (*Ventas*, *supra*, 165 Cal.App.4th at p. 1233.) But because the amount of any unpermitted costs can be made certain on remand, a full refund is not warranted. Plaintiff is entitled to a refund of all unpermitted costs that had been included in the cardroom regulation fee plaintiff paid in the relevant fiscal years. (See *Macy's*, *supra*, 143 Cal.App.4th at p. 1454 ["Macy's is entitled to be placed in a position equivalent to that occupied by local taxpaying businesses so it will have paid a valid measure of taxes."].)

Citing *Weisblat v. City of San Diego* (2009) 176 Cal.App.4th 1022, plaintiff argues that including unpermitted costs in the cardroom regulation fee renders it "void and ineffective for any purpose, and a full refund is warranted." But *Weisblat* involved a levy that the court found to be a tax in its entirety. (*Id.* at p. 1028 ["We specifically hold the levy is not a fee, but rather is a general tax."].) The court in that case therefore had no occasion to determine the proper remedy where only part of a charge is unpermitted.

Plaintiff also seeks a full refund under the reasoning of *General Motors*, which involved a municipal tax favoring local manufacturers. After finding the tax violated state and federal commerce protections (*General Motors*, *supra*, 69 Cal.App.4th at p. 451), the appellate court also found a partial refund inadequate for two reasons. First, the proposed remedy did not solve the commerce clause violation because it would not "eliminate disparate treatment of in-city and out-of-city manufacturers selling their goods" in the city. (*Id.* at pp. 454.) Second, the procedural aspects of the remedy were insufficiently certain because as proposed the taxpayer rather than the municipality would bear the "unfair burden of demonstrating double taxation." (*Id.* at p. 455, citing *McKesson*, *supra*, 496 U.S. at p. 32.) That reasoning does not apply here, as a refund of all costs associated with unpermitted activities will adequately address the constitutional nonconformity. And defendants, not plaintiff, will bear the burden on remand to demonstrate that the cardroom regulation fee included only costs permitted under Article XIII C, section 1, subdivision (e)(3).

## F. DUE PROCESS CAUSE OF ACTION

The trial court rejected plaintiff's 42 U.S.C. § 1983 due process cause of action as a matter of law after finding the cardroom regulation fee was not a tax. We invited supplemental briefing on whether plaintiff is entitled to a trial on the cause of action if the cardroom regulation fee included costs not permitted under Article XIII C, section 1, subdivision (e)(3).

18

Defendants argue that no trial is necessary because a refund of any "tax portion of the fee, with interest, will satisfy due process." (Citing *McKesson*, *supra*, 496 U.S. 18.) But *McKesson* instructs that procedural due process is not satisfied merely by a refund. Due process requires a government entity to provide "not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation," "but also a 'clear and certain remedy' " for any unlawful taxation. (*Id.* at p. 39.) To the extent the trial court determines on remand that the cardroom regulation fee included costs not permitted by Article XIII C, section 1, subdivision (e)(3), plaintiff will be entitled to a trial to pursue appropriate remedies in addition to a refund (e.g., declaratory and injunctive relief).

## G. REMAND INSTRUCTIONS

On remand, the trial court must identify, for each of the challenged fiscal years, any charges included in the cardroom regulation fee associated with the following four categories of activity: legislative activities (including work to amend Title 16 of the municipal code and travel to Sacramento to testify before the California Legislature); responding to requests under the California Public Records Act (Gov. Code, § 7920.000 et seq.); Gaming Control Division staff time spent on litigation; and tax monitoring activities. The trial court must then review specific charges within those challenged categories and time periods to determine whether each was a "charge imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and audits, ... and the administrative enforcement and adjudication thereof." (Art. XIII C, § 1, subd. (e)(3).) Defendants will bear the burden to show that the charges meet the constitutional exception. We defer to the trial court to exercise its discretion in deciding whether to allow additional evidence to decide this issue.

Plaintiff may not assert new challenges beyond the issues raised in this appeal. Nor may plaintiff argue that the *amount* of any valid charge imposed in the relevant years exceeded the reasonable costs of the governmental activity, as plaintiff has not properly

19

raised that argument on appeal. The equal allocation of the cardroom regulation fee between the two cardrooms is also beyond the scope of our remand, as we have determined the trial court's decision on that issue is supported by substantial evidence.

If the trial court identifies any specific costs in the challenged years of the cardroom regulation fee that do not meet the constitutional exception, the court must determine whether plaintiff is entitled to a refund. The trial court found that in all but two of the challenged years, the cardroom regulation fee was less than defendants' total actual costs. If defendants' actual allowable costs in a given year exceed the amount of the cardroom regulation fee for that year, plaintiff will not be entitled to a refund for that year. If defendants' actual allowable costs in a given year are less than the amount of the cardroom regulation fee, plaintiff is entitled to a refund of the overage.

If the trial court finds that plaintiff is due a refund for any year, plaintiff shall be entitled to a trial on the cause of action alleging a federal procedural due process violation. (42 U.S.C. § 1983.) The trial court shall have discretion to grant appropriate relief for any due process violation shown.

Because we are reversing the judgment, the costs award must also be reversed. Once the trial court applies the correct legal standards on remand, it must determine the prevailing party and award litigation costs in its discretion.

### III.    DISPOSITION

The judgment is reversed. The matter is remanded for the limited purposes described in Part II.G. of this opinion. As the prevailing party on appeal, plaintiff is awarded its appellate costs. (Cal. Rules of Court, rule 8.278(a).)

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

H046146
*Sutter's Place, Inc. v. City of San Jose et al.*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court Case No. 2013-1-CV-258057 |
| Trial Judge: | Hon. Paul R. Bernal |
| Counsel for Plaintiff and Appellant | McManis Faulkner, James McManis, Matthew Schechter, Richard Tyler Atkinson and Christine Peek |
| Counsel for Defendants and Respondents | Richard Doyle, City Attorney, Ardell Johnson, Chief Deputy City Attorney, and Margo Laskowska, Deputy City Attorney |

H046146
*Sutter's Place, Inc. v. City of San Jose et al.*